## THE PEOPLE, *ex rel.* HAWES, *vs.* WALKER.

Where an action is brought in the name of the people, on the relation of an individual, to test the right to an office, the name of the relator must be joined with the people, as plaintiff. But an omission to join the relator as a party may be cured by amendment, without costs.

An averment, in a complaint, that a meeting was *duly convened* implies that it was *regularly* convened, and, if necessary to its regularity, that it was an adjourned meeting.

When a private authority is conferred, on several, all must be present, and all must concur, unless provision be otherwise made.

When a public authority is conferred on individuals (not on a court) who are to act judicially, all must confer together, but a majority may decide.

In public cases not of a judicial character, a majority make a quorum, if a majority may decide.

Where a statute required that a commissioner of jurors, for the city and county of New York, should be appointed by the supervisors of said city, the judges of the superior court, and the judges of the court of common pleas, without saying any thing as to the number which should constitute a quorum, or whether a majority either of the whole body, or of the component parts, should be sufficient to appoint; *it was held,* that after due notice to all the persons mentioned, a majority of the whole number constituted a quorum, and were competent to decide any matter on which the whole body had authority to act; and that they therefore had the power to remove an individual from the office, and appoint another in his place.

*Held also,* that it was not essential to the validity of the appointment that all the judges of both the superior court and the common pleas, or a majority of each, should be present at the election.

ACTION to test the right of the defendant to exercise the office of commissioner of jurors, for the city and county of New York; to which office the relator, Hawes, claimed to have been duly appointed, in the place of the defendant. The case came before the court on demurrer to the complaint.

MITCHELL, J. The complaint is in the name of the people alone on the relation of Mr. Hawes, and is to test the title of the relator, or of W. A. Walker, to the office. In such case, by the code, "the name of the relator shall be joined with the people as plaintiff." (*Code,* § 434.) This defect may be cured by amendment without costs. The complaint alleges that "on the 4th day of March, 1850, at a meeting duly convened, of the

judges of the supreme court of the city of New York, the judges of the common pleas in and for said city, and the supervisors of the city of New York, the defendant was removed from the office of commissioner of jurors, theretofore held and exercised by him, and the relator duly appointed to that office." The complaint then shows that at that meeting there were present the mayor, the recorder, all the supervisors of the county, four of the six justices of the superior court, and one of the three judges of the common pleas; that of the absent judges, one of the superior court and one of the common pleas were personally served, on the 2d of March, with a notice to attend the meeting, and one other of each of said judges being temporarily absent from the city, was served on the same day with a like notice by leaving it at his residence, or place of business.

As the complaint shows that the defendant previously held the office, and does not set up any objection to his previous title, but only claims that he usurped the office "in continuing to hold" it after the election, it was not necessary for the defendant to set forth his title; he could rely on his prior title thus admitted, unless the plaintiff has shown a better title in the relator.

No question was raised as to the sufficiency of the notice. The complaint states that the meeting was "duly convened;" this would imply that it was regularly convened, and, if necessary to its regularity, that it was an adjourned meeting. No length of notice is prescribed by the statute, and two days' notice for persons all residing in the city, and whose duty it is to reside in the city and to be ready to perform the functions of their office, is not so clearly short notice that on a pleading it could be pronounced insufficient. In *Whiteside* v. *The People*, (26 *Wend.* 635,) the notice served on the judges was at 2 o'clock P. M. for the hour of 5 P. M. of the same day. They attended in fact, but withdrew as soon as the balloting was about to commence. Nor was it necessary that the notice should be personal; that is required when the object is to bring a party into contempt, or to subject him to the jurisdiction of a court; not when it is to give him the opportunity of exercising a right. This brings us to the question really in controversy in this

cause, whether it was essential to the validity of the appointment of the relator that all the judges of both the superior court and the common pleas, or a majority of each, should be present at the election.

The statute is that the commissioner is " to be appointed by the supervisors of said city, the judges of the superior court, and the judges of the court of common pleas for said city and county." (*Laws of* 1847, *ch.* 495, § 2.) It says nothing as to the number which shall constitute a quorum, nor whether a majority either of the whole body, or of its component parts, is sufficient to appoint. These questions are left to be decided on general principles, and the courts are to ascertain what was the intention of the legislature from any legitimate source of interpretation. When a power is submitted to three or more persons, under an agreement of individuals, and no other provision is made in the agreement, all the persons to exercise the power must not only meet together, but all must also agree in the result, or nothing else can be done by them. This is on the ground that such is the intention of those submitting to the control of the others, and not from any arbitrary or technical rule ; for the parties can, by agreement, adopt, and frequently do, in arbitration, adopt a different rule. But it is equally well established, that " where a number of persons are intrusted with a power, not of mere private confidence, but in some respects of a general nature, and *all* of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole." (*Eyre, C. J., in Grindley* v. *Barker,* 1 *Bos. & Pull.* 236, *and adopted in our state in Green* v. *Miller, in* 1810, 6 *John.* 39.) The language quoted speaks of *all* being regularly assembled ; not because it is always necessary that all should be assembled, but because in some cases that is necessary, and the court was discussing the right of the majority to decide. In fact the very next words of Eyre, C. J., in the case, though not quoted in Johnson's reports, are : " The cases of corporations go further ; there it is *not necessary* that the *whole* should meet ; it is enough if notice be given ; and a majority or a lesser number, according as the charter may be, may meet, and when they have met, they become just as

competent to decide as if the whole had met. In *The King* v. *Miller*, (6 *D. & E.* 269,) Lord Kenyon said, that when there is a definite body in a corporation, a *majority* of that definite body must not only exist at the time when any act is to be done by them, but a *majority* of that body must attend the assembly when such act is done. This language implies that the attendance of a majority would be sufficient; it is, however, only a *dictum*, as the decision was that the corporation was dissolved, as a majority of the forty-eight burgesses had ceased to exist. Yet if were not correct in principle, the corporation would have been dissolved by the death or resignation of any burgess. The charter gave the power of choosing the mayor and bailiff to the burgesses, and the mayor and bailiff, or the major part of them. It did not define what would be a legal number to constitute a meeting; but as the majority could choose by virtue of the charter, it was informed that a majority assembled, and concurring in the election, the assembly was valid although all were not present. The English charters (it is believed) seldom state expressly what number shall constitute a quorum, but still it is held that it consists of a majority, when a majority is authorized to decide. A different rule prevails when persons are appointed by the law to act as *special* tribunals of a quasi judicial character. Then both parties are entitled to the presence of all the judges, and to have the benefits of the consultation of each with every other. All must therefore meet together and consult, but then a majority may decide. (*Grindley* v. *Barker, supra.*) In the *Attorney Gen.* v. *Davy*, (2 *Atk*, 212,) three out of twelve persons had power to choose a chaplain. Two of the three chose a chaplain, the third dissented, and the question was whether this was a good choice. It was held to be good. Lord Hardwicke said, "It cannot be disputed that wherever a certain number are incorporated, a major part of them may do any corporate act; so if *all are summoned* and *part* appear, a major part of those that appear may do a corporate act, though nothing be mentioned, in the charter, of the major part." This case was approved by Eyre, Ch. J., in *Grindley* v. *Barker*, and applied by him to special tribunals, so far as it ruled that a majority could control.

He also says, " that part of the law of corporations applies to this case ; that with regard to powers not merely private, which are to be exercised by many persons, provided a *sufficient number* be assembled, the act of the majority concludes the minority, and becomes the act of the whole body." He does not say, " provided all be assembled," but, " provided a *sufficient* number be assembled." In *Ex parte Willcocks*, (7 *Cowen*, 402, 409,) the case of an election of directors of the Utica Insurance Com‑ pany, the president and one director had appointed the inspect‑ ors of the election, and it was held void. Savage, Ch. J., said, There must at least a majority of the directors be present to constitute a board. We do not understand the words, "A major‑ ity of the directors *present* shall be competent, or as amounting to a declaration, that a minority, however small, may decide. It leaves the number competent to form a *quorum* to be determin‑ ed by the rules of the common law, which, in no case of this kind, is satisfied with less than a majority. The general rule also is, that to make a quorum of a select and definite body of men *pos‑ sessing the power to elect*, a majority, at least, must be present." This decision seems to adopt another distinction ; that at com‑ mon law a *majority* of a definite body constituted a quorum, and that this is the general rule of a body possessing the *power* to elect. If the body be indefinite in number, then " a majority of those who appear at a regular meeting constitute a body compe‑ tent to transact business." (*Field* v. *Field,* 9 *Wend.* 394, 403.) These cases are also approved in *Angell & Ames on Corpora‑ tions,* 396, 398, *&c.*

In England, it seems to be understood that when a corpora‑ tion consists of a definite number, a majority will constitute a valid assembly of the corporation. In *Blucket* v. *Blizard,* (9 *Barn. & Cr.* 851,) Bayley, J., says, "I take it to be a general rule of law, that when a *public trust* is to be executed by a defi‑ nite number of persons, it must be executed at a meeting when a *majority* of that number is *present*, unless there be a usage or custom to the contrary." He adds : " In *Rex* v. *Burton,* (6 *T. R.* 592,) the statute having enabled the church wardens and overseers to contract for the providing for the poor, it was held

The People *v.* Walker.

not to be necessary that all the church wardens and overseers should contract, but it was considered to be clear that the concurrence of a majority was essential. In *Withnell* v. *Gartham*, (6 *Term R.* 388,) a power granted by deed to appoint a schoolmaster, given to the vicar and church wardens, was held to be well executed by the vicar and a majority of the church wardens. Littledale, J., said: "It is a well established rule that in order to constitute a good corporate assembly in the case of a corporation consisting of a definite and indefinite body, there must be *present* a *majority* of that number of which the definite body consists, although it is not necessary that there should be a majority of the indefinite body. By analogy to corporations and other cases where public, in contradistinction to private, trusts are to be executed by definite bodies, there ought (to constitute a good assembly of a select vestry) to be *present* a *majority* in number of the persons who constitute the select vestry." So Parke, J., concurs, and says : "I think that in all other cases the *general* rule of construction applied to charters, whereby the king has committed to a definite body the care of executing a public trust, ought to prevail."

Ch. J. Nelson understood the English law as not requiring all to be present, and said that, individually, he was not disposed to regard the revised statutes (2 *R. S.* 555, § 27) as conclusive on the question ; and spoke of our " cases," or rather *dicta*, as seeming to have followed a suggestion in *Grindley* v. *Barker*, (1 *Bos. & P.* 229,) which gives countenance to the idea that all must be present, and then a majority may act. He also said that the revisers did not intend to *alter* the rule respecting an authority of a general and public nature, but they mistook it as understood in England at the time, and that it had never been otherwise *determined* in this state. He held with the rest of the court in that case, (*The People, ex rel. Upham*, v. *Whiteside*, 23 *Wend.* 9,) that the act of 1836, (*ch.* 459, § 2,) declaring that " the county treasurer may be removed from office" by the *joint ballot* of the judges of the county courts and board of " supervisors at the annual meeting of the supervisors," did not authorize the supervisors to elect when the judges declared they would

not go into an election, and left the room when the balloting was about to commence. He said that the act not only "confers the power upon the two" bodies in joint ballot, but a majority of each must be "present and voting," and spoke of each board as an integral part of the elective body. The court for the correction of errors reversed the decision, (26 *Wend.* 634,) and the leading opinion maintained that, as the voting was to be by joint ballot, and not by concurrent resolution, when the meeting was convened, the bodies out of which it was formed were merged and became one; (*Id.* 641;) that the law did not contemplate the separate action of either the judges or supervisors; that the removal or election was *not* to be at the pleasure of both bodies; that it was not necessary for both bodies to concur, and that the withdrawal of the judges, under the circumstances, was unavailing; that the rule in English municipal corporations, treating each branch of the corporation as an integral part, when concurrence was essential to any act, was adopted there in imitation of their form of government, and did not apply here. The section of the revised statutes referred to by Ch. J. Nelson, (2 *R. S.* 555, § 27,) is in effect that whenever any power or duty is confided by *law* to three or more persons it "*may be exercised* by a majority of such persons upon a meeting of all, unless special provision is otherwise made." The language, and "*may be* exercised," is permissive, not restrictive; it allows a majority on a meeting of all, to act, but does not declare that a meeting of all shall be essential to the validity of the meeting. It leaves that question open. So also does the note of the revisers. They spoke of the decision in 6 *John.* 39, as holding that "a power for a public purpose might be exercised by" a majority at a meeting of the whole.

In *Downing* v. *Rugar*, (21 *Wend.* 178,) Cowen, J., said, although it was not material to the case, that "in the exercise of public as well as private authority, whether it be ministerial or judicial, all the persons to whom it is committed *must* confer and act together, unless there be a provision that a less number may proceed." And he referred to *Green* v. *Miller*, (6 *John.* 89;) *Grindley* v. *Barker*, (1 *Bos. & P.* 236;) 2 *R. S.* 458, § 27,

The People v. Walker.

2d ed.; 3d ed. 780, notes; Rex v. Burton, (3 John. 592, 4.) These cases do not sustain his position, and the English cases are not so understood in England. (See 9 Barn. & Cr. 851, above.) This is probably one of the dicta referred to by Judge Nelson.

In Sargent v. Webster, (13 Metc. 504,) Shaw, Ch. J., said, "In ordinary cases, when there is no other express provision, a majority of the whole number of an aggregate body who may act together constitute a quorum, and a majority of those present may decide any question upon which they can act.

Is it not the result of these cases then, First. That when a private authority is conferred all must be present, and all must concur, unless provision be otherwise made. Second. That when a public authority is conferred on individuals (not on a court) who are to act judicially all must confer together, as that is the object of having more than one or two, but that a majority may decide. Third. That in England each part of their municipal corporations is treated as an integral part of the corporation, and in comparing them to the king, lords and commons, neither can act without the others. Fourth. But here no such rule of allowing a negative on each, prevails when the voting is to be on joint ballot. Fifth. That in England, when a majority of a corporation may decide, then if notice be given to all and the number of the corporation is definite, a majority attending constitute a valid assembly, and if the number of the corporation be indefinite, those who attend, though less than a majority, may also act. Sixth. And the same rule applies to other public bodies not acting judicially, especially if engaged in the election of officers. Seventh. There are dicta in our courts requiring all to be present in the last two cases, but no express decision to that effect; and there are, apparently, opinions of Chief Justice Nelson, and of Chief Justice Savage to the contrary, confirmed by the English opinions and the authority of Angell & Ames. Eighth. That the revised statutes allow in all cases of public authority a majority to decide if all the persons entitled to act be present, unless there is some special provision to the con-

trary; but do not lay down a rule that all must be present in cases where the common law before did not make it necessary.

The English authorities being clear on the subject, as to what the common law is in such a case, and the *dicta* here opposed to each other, the weight of authority seems to be in favor of the English rule; that in public cases, not of a judicial character, a majority make a quorum, if a majority may decide. This best comports with the spirit and the general tenor of our laws, and with our republican institutions. It is not to be supposed that the legislature, when conferring a power of removal and appointment on twenty-nine different men, intended that two out of the whole number should be able to prevent the action of the others. Yet this is so, if, as is contended, two judges of the common pleas, by being absent, prevented any valid election; or if the broad principle be adopted that all must attend, then any one, by absenting himself, can defeat the wishes of the other twenty-eight.

The elective body in this case consisted of the supervisors and the judges of the supreme court and common pleas; the first consisting of eighteen aldermen, with the mayor and recorder; the second of six, and the third of three judges. They were to meet together, and then to vote on joint ballot; so that there was no need of the concurrence of each class of voters. The law had already provided that a majority of the supervisors of any county should constitute a quorum for the transaction of business, and that all questions which should arise at their meetings should be determined by the votes of the majority of the supervisors present; (1 *R. S.* 367, § 5; *Id.* 368, § 17;) and that a general term of the superior court could be held by any two of its six judges. (*Laws of* 1849, *ch.* 124, § 7.) It is entirely contrary to the spirit of this legislation to assume that the law meant to give to one or more members of either court or of the supervisors an absolute power to prevent the action of the others. If not, then, on due notice to all, a majority of all must constitute a quorum, and be able to decide any matter on which the whole body had authority to act. This would entitle the plaintiff to judgment, on his amending his complaint.

The term of office of both parties has expired, and a new law

has been passed, not in conformity with the view of either party to this action, but requiring a majority of each of the three classes to be present, and then allowing a majority of those present to decide. (*Laws of* 1854, *ch.* 392.) Still the case is to be decided according to the former law, and the plaintiff is entitled to judgment. (5 *Denio,* 409, 444.)

Let judgment be for the plaintiff on his amending his complaint, as suggested, with leave also to the defendant to answer in twenty days on payment of costs of the demurrer.

