[No. 1,097.]

## THE STATE OF NEVADA, EX REL. R. H. SCOTT, *v.* W. A. TROUSDALE, AUDITOR OF HUMBOLDT COUNTY, RESPONDENT.

LONG-TERM COUNTY COMMISSIONERS—SALARY OF REGULATED BY SALARY ACT. The compensation of county commissioners is regulated by the provisions of the salary act.    (Stat. 1879, 133.).

IDEM—MILEAGE.—The provision allowing mileage in the former law was intended as a part of the compensation of commissioners for their services. The language of the salary act that the salaries fixed " shall be in full for all services," excludes the idea that the legislature intended to allow the former provision upon that subject to stand.

ACCEPTANCE OF AN OFFICE—NOT A CONTRACT.—No contract is created between the government and the officer by his acceptance of the office.

APPLICATION for mandamus before the Supreme Court.

The facts are stated in the opinion.

*M. S. Bonnifield and T. W. W. Davies*, for Relator.

No appearance for Respondent.

By the Court, BELKNAP, J.:

At the general election held in November, 1878, relator was elected a county commissioner of the county of Humboldt for the period of four years from the first Monday in January, 1879. He duly qualified, and on the last-named day entered upon the duties of his office, and has ever since continued to perform the same.

At the first meeting of the board of county commissioners in the year 1879, the compensation of its members was fixed at six hundred dollars per annum, payable in

equal quarterly payments of one hundred and fifty dollars. The board allowed relator's claim for services for the quarter year ending June 30, 1881, at the rate then fixed, together with mileage. Afterward the respondent, who is the recorder and *ex officio* the auditor of Humboldt county, refused to allow the same for the reason that the statute under which relator's compensation had been fixed, and which permitted him to receive for his services not exceeding the sum of six hundred dollars per annum, together with mileage (sec. 3086, Comp. Laws), had been repealed by the act of March 11, 1879, commonly known as the salary act. (Stats. 1879, 133.)

This act by its first section provides that "From and after the first Monday in January, 1881, the following named officers of the several named counties in this state shall receive the following annual salaries, which shall be in full for all services, and all *ex officio* services required of them." The succeeding sections are severally devoted to the affairs of each county of the State.

The seventh section provides that each of the commissioners of Humboldt county shall receive the sum of five hundred dollars.

The auditor claims that the compensation of the commissioners is regulated by the provisions of the last-mentioned law, rather than by the law in force at the time the board met in January, 1879, and admits that relator is entitled to one fourth of five hundred dollars for his quarter-year services, ending June 30, 1881, but not to mileage.

The views of the auditor are correct. The language of the first section of the salary act, above quoted, is too plain to admit of construction. If the legislature intended to exclude long-term county commissioners, elected at the election of 1878, from the operations of the general salary law, and to have continued their compensation at the rate theretofore established during the continuance of the term for which they were elected, language expressive of such intention should have been employed.

The law, as it stands upon the statute book, applies to all county officers, irrespective of the time of their election,

and we can not, in defiance of its language, interpolate any exception to its provisions.    The provision allowing mileage in the former law was intended as part of the compensation of commissioners for their services. . Mileage is not mentioned in the present law, but the language of the first section, providing that the salaries fixed "shall be in full for all services," excludes the idea that the legislature intended to allow the former provision upon that subject to stand.

It is also said that the law of 1879 is obnoxious to the objection that it impairs the obligation of a contract, contrary to the prohibition of the constitution of the United States.

Under analogous facts the same objection was made by the mayor of Philadelphia to an ordinance of the council of that city ·reducing his salary.    The court determined, in accordance with every well-considered case upon the subject, that no contract was created between the government and the officer by his acceptance of the office.    The court said: "These services rendered by public officers do not, in this particular" (that of compensation), "partake of the nature of contracts, nor have they the remotest affinity thereto. As to stipulated allowance, the allowance, whether annual, *per diem*, or particular fees for particular services, depends on the will of the law-makers; and this whether it be the legislature of the state or a municipal body empowered to make laws for the government of a corporation.    This has been the universal construction.    *   *   *"    (*Commonwealth* v. *Bacon*, 6 Serg. & R. 322.)

The subject received a very thorough investigation in the case of *Connor* v. *The City of New York*, 2 Sandf. 355.    In that case the compensation of the plaintiff, the clerk of the city and county of New York, was changed by an act of the legislature so as to take effect during his term of office.    The court considered that there was no contract, express or implied, between the government and the officer, because there was no agreement that he should fulfill the duties of the office for any specified time, but that he could resign at his pleasure, irrespective of the desire of the government.

In discussing the subject the following language was .

employed: "In our opinion a public officer is an agent, elected or appointed to perform certain political duties in the administration of the government. The legislative power prescribes these duties, and gives to the officer such compensation for their discharge as is deemed just. The same sovereign power which prescribes the duties may alter them at pleasure. It may increase them without enhancing the compensation. (*Andrews* v. *The United States,* 2 Story, 202.) In like manner the same power may diminish the compensation without lessening the duties. If the officer receive fees it may abolish some, reduce others, or take away all and compensate him by a salary. His right to the emoluments of the office is held subject to all these modifications. All these consequences flow from the political character of the agency and the supremacy of the government in regulating it for the public good." Following this train of reasoning the court was of opinion that an office created by the constitution, with its term and salary defined, could be terminated by the people in their sovereign capacity by the adoption of a new constitution.

The constitution of the state of New York, like that of the state of Nevada, enumerated certain special cases in which the legislature was forbidden either to increase or diminish the salary during the term for which the officer was elected. This constitutional prohibition was referred to by the court in New York (and it is as applicable here as there) for the purpose of showing that in all other cases the legislature was unrestricted in its authority to change the compensation of officers. (See also *Conner* v. *Mayor etc.,* 5 N. Y. 285; *Denver* v. *Hobart,* 10 Nev. 28.)

Mandamus denied.