THE STATE EX REL. SWEET and another vs. CUNNINGHAM and others.

*January 15 — May 25, 1894.*

| 88 | 81 |
| 88 | 110 |
| 88 | 81 |
| 107 | 429 |

*School lands: Setting aside for state park: Withholding from sale: Power of commissioners to withdraw lands once offered: Lands withdrawn, when subject to private sale: Retroactive statute.*

1. Lands belonging to the school fund cannot, under sec. 2, art. X, Const., be set apart by the legislature for a state park.
2. The legislature cannot withhold school lands from sale, since, by sec. 8, art. X, Const., that power is confided to the discretion of the commissioners of public lands.
3. Under sec. 8, art. X, Const., providing that the commissioners of public lands "shall have power to withhold from sale any portion" of the school lands "when they shall deem it expedient," the commissioners have power to withdraw from sale school lands which have once been offered at public sale.
4. Under ch. 222, Laws of 1885, public lands which have once been withdrawn from sale become again subject to private sale only after they have been re-offered at public sale.
5. Ch. 222, Laws of 1885, applies to lands withdrawn from sale before its passage, as well as to those afterwards withdrawn, but does not for that reason have a retroactive effect, since it operates only upon conditions existing at the time of its passage or arising afterwards, and upon sales made after its passage.

MANDAMUS to the Commissioners of the Public Lands. The relation sets out that on June 5, 1893, the relators made application, in the manner required by law, for the purchase at private sale of certain school and swamp lands therein described; that said lands were then subject to entry at private sale; and that the application was refused by the commissioners. The return of the commissioners to the alternative writ states that a part of these lands had been withdrawn from sale and reserved for a state park by ch. 324, Laws of 1878; that all of said lands had been withdrawn from sale by an order of the commissioners made

February 13, 1883, and were not, at the time of relators' application to buy them, subject to private sale.

It was referred to the judge of the thirteenth circuit to hear, try, and determine the issues of fact. His determination of such issues is on file in this court. It finds that all of said lands, except five forty-acre tracts, had been, prior to June 5, 1893, offered for sale at public sale, and then remained unsold; that, after they had been so offered for sale at public sale, to wit, on February 13, 1883, the commissioners made an order withdrawing all public lands from sale; and again, on April 3, 1883, made another order, declaring that all public lands which had been withdrawn from market by the former order were thereby restored to market and were again for sale; that, prior to June 5, 1893, the letter "R" had been written opposite to each tract of such lands in the books of the land office, which was understood in the office to mean that such lands were reserved from sale; and that after relators' application was received the commissioners made a formal order withdrawing such lands from sale.

For the relators there were separate briefs by *Elliott & Hickox* and *D. S. Tullar*, and oral argument by *E. S. Elliott* and *Mr. Tullar.*

For the respondents there was a brief by the *Attorney General*, and oral argument by *J. M. Clancey*, Assistant Attorney General.

The following opinion was filed January 30, 1894:

NEWMAN, J. The question of law arising upon the facts found is, Were these lands subject to private sale at the time when the relators made application to buy them?

Probably ch. 324, Laws of 1878, which declared these lands to be dedicated and set apart for a state park and forbids their further sale, has very little influence upon the question. These lands mostly belong to the school fund

of the state. The school fund is a trust fund, and is placed by the constitution beyond the power of the legislature to divert it to any other use than the support of the schools of the state. It could not set them, or any part of them, apart for a state park. Const. Wis. art. X, sec. 2; *Lynch v. The Economy*, 27 Wis. 69; *People v. Allen*, 42 N. Y. 404. Neither could it withhold these lands from sale. That power is confided to the discretion of the commissioners of public lands by the constitution, and lies in no other office or body. Const. Wis. art. X, sec. 8; *State ex rel. Crawford v. Hastings*, 10 Wis. 525; *McCabe v. Mazzuchelli*, 13 Wis. 478; *State ex rel. Kennedy v. Brunst*, 26 Wis. 412. So the state park law has very little influence on the question.

These lands had been once offered at public sale. Afterwards, on February 13, 1883, the commissioners of public lands made an order withdrawing all the public lands from sale. This they had power to do, at least so far as concerns the school lands. Art. X, sec. 8, of the constitution reads: "The commissioners shall have power to withhold from sale any portion of such lands, when they shall deem it expedient." This action of the commissioners had the effect to withhold from sale, while in force, at least all the school lands owned by the state, including those described in the relation. Afterwards, April 3, 1883, the commissioners made another order declaring all the lands affected by the previous order to be again in market and for sale. Afterwards ch. 222, Laws of 1885, was enacted. It provides that "the commissioners of public lands are hereby authorized, at any time when, in their judgment, the public interest can be best subserved thereby, to withdraw any public lands from sale; provided that, when re-offered, the lands so withdrawn shall first be offered at public sale, such public sale to be advertised and conducted, in all particulars, in the same manner as public sales are now held."

A defect in the system of disposing of the public lands

was supposed to be disclosed by the decision of this court in *State ex rel. Holston v. Commissioners*, 61 Wis. 274. In that case it was held that, under the statute as it then was, all public lands which have been once offered at public sale and remain unsold are thereafter subject to private sale at the minimum price, and cannot be withdrawn from sale by the commissioners of public lands. The lands involved in that case were school lands. The provision of the constitution above cited seems not to have been recalled to the mind of the court. At least the provision is not referred to in the opinion of the court, nor in the briefs of counsel. The opinion goes entirely upon a construction of the statute as it then was. It was a mistake, as to school lands at least. The defect in the system for the disposal of the public lands, which became apparent by this decision, was that the statute seemed to defeat altogether the beneficial purpose of the constitution in giving to the commissioners discretion to withhold school lands from sale; and, as to all public lands, it deprived the state of all chance of advantage from the rise in value of public lands consequent on the increase of population and the development of the country in districts where the public lands lie. The statute seemed to compel the sale of the public lands, at the minimum price, to the first applicant, regardless of their real value. This prospective rise in value was doubtless the more common and important purpose in withholding the lands temporarily from sale. The act of 1885 was doubtless enacted to remedy this defect. The first clause of the act confers no new power upon the commissioners, so far as relates to the school lands. The commissioners had always had power to withhold the school lands from sale whenever they deemed it expedient, under the provision of the constitution above cited. But it did confer upon the commissioners a new power to withdraw from sale public lands other than the school lands. The last clause or proviso of the

act did change the statute in a very important particular. It withdrew from private sale all public lands which had been once withdrawn from sale by the commissioners, by providing that they should not be again re-offered, for sale until they have been again regularly advertised and offered at public sale.  This remedy seems to be sufficient to cure the evil.  At least, it seems to give the state a chance to derive advantage from such rise in the value of the public lands as may accrue while they are withheld from market, through competition between rival bidders at a public sale. This will, no doubt, be more to the advantage of the public than a compulsory sale, at private sale, at the minimum price, to the first applicant.

There is no question of the power of the legislature to direct the manner in which the public lands shall be sold. It may direct whether they shall be sold at public sale or at private sale and upon what notice.  As to school lands, art. X, sec. 8, of the constitution provides: "Provision shall be made by law for the sale of all school and university lands after they shall have been appraised." It does not appear by the finding whether the school lands mentioned in the relation have been appraised.  As to lands other than school lands, there is no constitutional direction. This statute is remedial.  It is to be construed liberally, to advance the remedy intended by the legislature.  As the law was then understood, the public lands were then subject to compulsory sale at the minimum price.  All had been once withdrawn from sale by the order of the commissioners, February 13, 1883.  The act was intended to apply to such lands as had been withdrawn from sale before its passage, and not alone to such as might be withdrawn after its passage.  Else the remedy must fail, in great part, to cure the evil.  Besides, the act being a part of the system which the legislature has provided for the disposal of the public lands, it is *in pari materia* with all other statutes

upon that subject. It is implied that a code of statutes relating to one subject is governed by the same spirit and is intended to be consistent and harmonious. "All statutes *in pari materia* are to be read and construed together as if they formed parts of the same statute and were enacted at the same time." Potter's Dwar. Stats. 145, American rule 17; *Storm v. Cotzhausen,* 38 Wis. 139; *Smith v. People,* 47 N. Y. 330, 339; *Eldred v. Sexton,* 19 Wall. 189. The plan now is that all lands which have once been withdrawn from sale become again subject to private sale only after they have been re-offered at public sale. With this construction the plan is consistent and harmonious and furnishes the remedy intended.

The lands described in the relation had been withdrawn from sale by the order of the commissioners of February 13, 1883. It does not appear that they had been re-offered at public sale, as directed by the act of 1885. They were not subject to private sale on June 5, 1893.

*By the Court.*— The peremptory writ of *mandamus* is denied.

Upon a motion for a new trial, counsel for the relators contended: *First.* That the conclusions arrived at by this court improvidently reverse a judgment of this court of long standing and hitherto unquestioned authority (*State ex rel. Holston v. Commissioners,* 61 Wis. 274). *Second.* That ch. 222, Laws of 1885, is not retroactive, because (1) it is plainly prospective in its phraseology; (2) the general usage for many years has been to treat it as prospective only; (3) it was not necessarily retrospective if enacted as a curative law; (4) if considered as retroactive it is unconstitutional, in that such a construction antagonizes vested rights and deprives a department of the government of a portion of its constitutional functions.

The following opinion was filed May 25, 1894:

The State ex rel. Sweet and another vs. Cunningham and others.

NEWMAN, J.  The relators' attorneys have misappre-hended, in some respects, the decision in this case.  It is not obnoxious to all the criticisms made upon it.

It is observed by counsel that neither counsel in the case called in question the proper construction of ch. 222, Laws of 1885, and hence that the court was not asked to construe it.  Nevertheless, the court felt called upon to construe it.  It seemed to the court that the proper construction of that statute was the key to the situation.  The construc-tion of that statute being settled, the whole case is open and clear.  The court held that that statute was "intended to apply to such lands as had been withdrawn from sale before its passage, and not alone to such as might be with-drawn after its passage."  All else of the decision is but the corollary from that construction.  This construction of the statute was required upon well-established canons of construction.  It makes the remedy intended by the legisla-ture effectual.  This construction does not, as counsel urges, give the statute a retroactive operation.  It operates only upon sales of the public lands which may be made after its passage, and then only upon lands which had been offered for sale and withdrawn at the time of its passage, or such as should thereafter be offered and withdrawn.  It operates only upon a condition existing at the time of its passage, or arising afterwards.  This is not retroaction.  It does not disturb any vested rights.

Nor is it strictly accurate to say that the decision re-versed or overruled the case of *State ex rel. Holston v. Com-missioners,* 61 Wis. 274.  The decision certainly does not overrule it, in terms.  That case was not in point.  It in no way conflicts with the decision in this case.  What was thought to be an oversight or mistake was pointed out.  That is all.

It is true that, etymologically, there is a difference in the meaning of the words "withhold" and "withdraw," which

counsel, with a nice philological acumen, makes clear. But, in the construction of statutes, words are taken in their more ordinary and popular meaning, without too great refinement or research into their etymology. As applied to this subject matter,— the right of the commissioners to decline to sell the public lands,— it would make little difference, in the common apprehension, whether it should be said "the commissioners may withhold the land from sale," or whether it should be said "the commissioners may withdraw the lands from sale." It obviously comes to the same thing in the end. The lands are not sold; and that is the result which the lawmakers intended by either form of words. They intended to give the commissioners the right to decline or refuse to sell the lands. The argument of counsel has not convinced the court that the decision is wrong.

*By the Court.*— The motion for a new trial is denied.