STATE EX REL. GUBBINS, Appellant, vs. ANSON and others, Respondents.

*May 25—June 20, 1907.*

*Constitutional law: Local self-government: "County officers:" Appointment of jury commissioners: Judiciary exercising executive functions: Public office: Qualifications: Quo warranto: Who may maintain action.*

1. In the absence of any constitutional restrictions of the power to modify or diminish the scope of local self-government, the legislature may locate where it deems best such governmental functions as are not essential to the existence of counties, cities, vil-

State ex rel. Gubbins v. Anson, 132 Wis. 461.

lages, and towns, or to their efficiency to accomplish those purposes for which the constitution employs them, or such powers as are not essentially characteristic of specific local officers named in the constitution and by it required to exist and persist.

2. The selection of jurors is not a function essential to the existence or efficiency of a county and may therefore be imposed upon some other subdivision of the state, such as the judicial circuit; and when it is made a duty of the circuit judge, to be performed through commissioners to be selected by him in each county, such commissioners, though acting only in their respective counties, are not county officers.

3. The provision of sec. 9, art. XIII, Const., that all officers whose offices may hereafter be created by law may be appointed as the legislature may direct, is limited to such offices as are not mere substitutes or equivalents for offices existing at the adoption of the constitution.

4. Sec. 2533a, Stats. (1898), providing for jury commissioners to be appointed by circuit judges and imposing on them the selection of jurors, does not impair or embarrass any function essential to counties, and the office thus created being a new one within the meaning of sec. 9, art. XIII, Const., the incumbents thereof may be appointed in such manner as the legislature shall deem best.

5. Jury commissioners not being county officers, sec. 2533a, Stats. (1898), providing for their appointment by circuit judges, does not violate sec. 4, art. VI, Const.

6. While sec. 2533a, Stats. (1898), authorizing circuit judges to appoint jury commissioners, does confer upon judicial officers a function which generally pertains to the executive, it comes within the exception that within both the judicial and legislative branches of the government are certain administrative acts in aid and execution of the judicial and legislative functions which need to be performed by assistants, and, as the legislature or judiciary might constitutionally perform such acts, they may select those who are to aid them in such performance.

7. Sec. 2533a, Stats. (1898), prescribing certain qualifications for jury commissioners, does not impose unconstitutional tests, such qualifications being reasonably germane to the duties which the officers are required to perform.

8. The office of jury commissioner, provided for by sec. 2533a, Stats. (1898), not being an office pertaining to a county, a private person cannot, under sec. 3466, bring an action of *quo warranto* in the name of the state for the usurpation of such office, without first applying to the attorney general.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, WARREN D. TARRANT, ORREN T. WILLIAMS, and J. C. LUDWIG, Circuit Judges, *in banc. Affirmed.*

For the appellant there was a brief by *W. J. Turner, C. F. Hunter,* and *John J. Cook,* and oral argument by *Mr. Turner* and *Mr. Cook.*

In support of the appellant there was also a brief by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley* as *amici curiæ.*

A brief was also filed by leave of court on behalf of Fred C. Schultz by *Lyman G. Wheeler,* attorney, and *Charles Quarles,* of counsel.

*Francis E. McGovern* and *Roger M. Trump,* for respondents.

DODGE, J.   The relator, as an elector and taxpayer of Milwaukee, seeks, by *quo warranto,* to test the title of the respondents to office of jury commissioners, appointed by the circuit judges for the second judicial circuit in compliance with sec. 2533a, Stats. (1898), and claiming to exercise the functions of that office under that and following sections.

The appeal is from order sustaining demurrer to the complaint upon the ground of relator's incapacity to sue, at least without joining attorney general, and for absence of facts to constitute cause of action.   The ground of attack is upon the constitutionality of the law creating the office.   The principal assault is for asserted breach of sec. 9 of art. XIII of the state constitution, the provisions of which, so far as germane to the discussion, are as follows:

"All county officers whose election or appointment is not provided for by this constitution shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature shall direct. . . . All officers whose offices may hereafter be created by law shall be elected by the people or appointed, as the legislature may direct."

It is urged that these jury commissioners are county offi-
cers; that their offices have not been created, in a constitu-
tional sense, since the adoption of the constitution, hence
that the incumbents must either be elected by the electors
or appointed by some county authority, and that the circuit
courts or circuit judges of the state are not county authori-
ties. It is not contended that at the time of the adoption of
the constitution any officers known as jury commissioners
existed in this state either as county officers or otherwise,
but it is contended that the selection of names to go upon
the jury list for the circuit courts of the state was at that
time imposed upon certain county officers, who also had vari-
ous other duties, and that the creation of an officer to ex-
ercise that function is but an evasion of the constitutional
restriction.

This section of our constitution was taken, substantially
*verbatim,* from the constitution of 1846 of New York.
Const. 1846, art. 10, § 2. It had received no authoritative
construction by the ultimate court of that state prior to its
adoption here in 1848, but, before serious questions arose in
this state upon it, it did receive exhaustive discussion and
construction in an opinion by DENIO, J., in *People ex rel.
Wood v. Draper,* 15 N. Y. 532, both the reasoning and de-
cision in which were almost at once accepted and approved
by this court. *State ex rel. Crawford v. Hastings,* 10 Wis.
525; *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614,
14 N. W. 844; *State ex rel. Hamilton v. Krez,* 88 Wis.
135, 59 N. W. 593; *O'Connor v. Fond du Lac,* 109 Wis.
255, 85 N. W. 327; *State ex rel. Harley v. Lindemann, ante,*
p. 47, 111 N. W. 214; *State ex rel. Williams v. Samuel-
son,* 131 Wis. 499, 111 N. W. 712. The general proposi-
tions declared in that case, and so accepted and approved,
were that the purpose of this section of the constitution
was to protect in a general way the policy of local self-gov-
ernment in cities and counties, to the extent at least that

such officers as exercised the functions of such local government at the time of the adoption of the constitution should continue to be chosen by the locality, and from this was deduced the view that "all county officers" in the first sentence of the above quotation meant those existing when the constitution was adopted, and that, while the constitution in express terms permitted other method of selection of incumbents of offices thereafter to be created, it could refer in that regard only to offices and officers different in kind from any formerly existing, otherwise the effect of the last clause would be to nullify the former by the mere creation of offices new in name, but in all practical effect mere perpetuates of the old ones. Hence was declared a limitation of the meaning of the words "offices which may hereafter be created by law" to such as were not mere substitutes or equivalents for pre-existing offices. The idea is expressed in the *Draper Case, supra,* as prohibition, notwithstanding mere change of name or colorable modification of functions. In *People v. Raymond,* 37 N. Y. 428, where part of the former duties of assessors were transferred to a newly created board of commissioners, the latter were held to merely perpetuate the old office, and that dividing duties of an old office would not justify the new one to be considered "created" after the constitution within the meaning of that word. In *Metropolitan Board of Health v. Heister,* 37 N. Y. 661, a statute subsequent to the constitution had created a board of health with the ordinary powers of such a board. Prior to the constitution such health powers had been scattered amongst various officers, some of them being conferred upon the mayor, some upon the common council, some upon health wardens, and some upon police officers, of one degree or another, and it was said that such board, if for the same municipality, must be considered as holding offices existing at the time of the constitution, although no one officer at that time exercised all the powers, and although, perhaps, no separate officer

then existed for the exercise of any of them. In *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614, at page 626 (14 N. W. 849), it was said that the last clause of sec. 9, art. XIII, "has no reference to any of the kind of offices provided for in the constitution, but only to other kind of offices thereafter created." In *O'Connor v. Fond du Lac, supra,* at page 267 (85 N. W. 332), the clause requiring local selection of all other officers was said to apply to all local officers "according to the then known scheme for local self-government." In *State ex rel. Williams v. Samuelson,* 131 Wis. 499, at page 512 (111 N. W. 716), the offices permitted to be created by the legislature were described as those the duties of which "are not such as were incident to some county office at the time of the formation of the constitution." *State ex rel. Crawford v. Hastings,* 10 Wis. 525; *McCabe v. Mazzuchelli,* 13 Wis. 478; *State ex rel. Kennedy v. Brunst,* 26 Wis. 412; *State ex rel. Sweet v. Cunningham,* 88 Wis. 81, 83, 57 N. W. 1119, 59 N. W. 503; and *Warner v. People ex rel. Connor,* 2 Denio, 272, present unconstitutional attempts to withdraw from constitutional officers portions of their powers and to confer the same on others.

It will thus be observed that the courts have indicated a reasonably close discrimination in recognizing as a newly created local officer one who exercised any duties which at the time of the constitution were performed by local officers, and, while it may be that some functions were at the time of the constitution imposed upon then existing town, city, or county officers which were so entirely incidental and casual and so without relation to the characteristics of their respective offices, or, indeed, of local government at all, that, when the legislature might deem it best to relieve such officers of such incidental duties and confer them upon one specially created to exercise them, the latter's office may with propriety be held to be newly created, yet the line of demarcation between such a situation and that condemned by the various

authorities has not as yet been drawn, and will require much nicety of discrimination in its location. In view of other reasons which seem to us sufficient, it will not be necessary in the present case to decide whether it would have been permissible to gather the various duties and functions involved in the make-up of the jury list into the hands of a newly designated county officer without subjection to that clause of the constitutional article under discussion requiring a selection by local authority. We proceed to consider those reasons.

The extent to which local self-government *per se* is withdrawn by the constitution from legislative interference has been a subject of much discussion and more declamation. It has been declared and reiterated in most of the cases already cited, both with reference to the constitution of New York and the constitution of this state, that the constitution addressed itself to an already organized civil government, which included, as a very important element thereof, the control of some local affairs by the towns, villages, cities, and counties existing in the state; and it has been broadly contended, not without support from *dicta* in decided cases, that a purpose must be inferred from the constitution to preserve intact and to their fullest extent the functions of local government which were existent at the time of the constitution. The trouble with this view is that the constitution nowhere in terms restricts the legislature from modifying or diminishing the scope of local self-government. That instrument, in the broadest terms, confers all legislative power upon the legislature; and within that legislative power is, of course, the prescribing of the extent to which powers of government shall be delegated to subordinate political divisions of the state. Hence, in order that a court may hold invalid any attempted legislation in that respect, there must be found elsewhere in the constitution limitation of that power, either by express words or by clear, certain, and necessary implication. The framers of the constitution, had they so

intended, might easily have said that the legislature shall never withdraw from towns, cities, or counties any of the powers then exercised by them. They did not say so, and, but for some possible limitations in detail not necessary of reference, have contented themselves with declaring that the local officers who might exercise such powers as, at the date of the constitution, were already vested in local officers should be chosen by the locality. It was to be expected that, as population should increase and society progress in complexity, it might be deemed wise to delegate to municipalities powers which had not become necessary at the organization of our government, to distribute amongst towns and cities some of the powers which at that time were exercised by counties, or to concentrate in counties functions which had previously been found convenient of performance by the towns. So, in like manner, as population became more generally and uniformly distributed over the state, interests which formerly varied very much locally might become so generalized as to be best regulated or administered by the central authority of the state or by subdivisions thereof larger than either the town, city, or county.

That this field of legislative discretion was not taken away from the legislature is suggested by all the years of practical construction which have followed the constitution. Questions of excise and license have at some times been delegated, in whole or in part, to the ultimate political subdivisions, and at others have been regulated by the state legislature. The care of paupers, insane, and other incompetents has been changed from town or city to county, and in varying respects has at times been deemed best controlled by the general state government. In New York, containing as it always has the extraordinary metropolitan aggregation of people about the city of New York, we find that in the regulation of such subjects as the public health, excise, the police, the water supply, the assessments of some kinds of property,

as well as many others, it has been found wise to vary from time to time the territorial limits for their control, and the question of the power to do so was that which invoked the construction of the constitution in the *Draper Case* (15 N. Y. 532), already referred to. There was considered a law which created a metropolitan police district, including the counties of New York, Kings, Westchester, and Richmond, constituted a board made up of representatives from each of said counties and from the city of New York, and including therein the mayors of New York and Brooklyn, to exercise substantially all management of the police force or forces of the entire district, superseding every such function which theretofore had been vested in municipalities within that district. It was assailed as depriving those municipalities of one of the most obvious phases of local self-government, in defiance, as was claimed, both of the letter and of the manifest spirit and purpose of the section of their constitution corresponding with sec. 9, art. XIII, of our own. After conceding that there were some functions of cities and counties which by other provisions of the constitution were made essential to the whole scheme of state government, so that the legislature could not wholly abolish such subdivisions nor curtail them of the powers essential to the performance of those functions, the court went on to say (15 N. Y. 541):

"But there is nothing in it which requires that these local divisions should always possess the same measure of administrative power, or that local functionaries should always exist within them possessing the same functions as when the constitution was adopted. The counties and cities must not only be preserved, but the legislature must do nothing respecting them which will render them less suitable for the purposes for which they are recognized and employed by the constitution. . . . If we were to establish the principle that the legislature can never reduce the administrative authority of counties, cities, or towns, can never resume in favor of the central power any portion of the jurisdiction of those

local divisions, or change the partition of it among them, as it existed when the constitution was adopted, we should, I think, make an impracticable government. It is the business of the legislature to adjust, in the interest of the whole people of the state, the distribution of the powers of government, taking care that no direct provision of the constitution is violated, and that no arrangement which it has made is incidentally disturbed. . . . It follows that it belongs to the legislature to arrange and distribute the administrative functions, committing such portions as it may deem suitable to local jurisdictions, and retaining other portions to be exercised by officers appointed by the central power, and changing the arrangement from time to time, as convenience, the efficiency of administration, and the public good may seem to require."

Upon such reasoning it was held competent to withdraw from the cities all power of control over their local police and to intrust it to officers representing a larger district or the state at large. This case has been followed in New York by many others, all recognizing it as authoritative. *People v. Pinckney,* 32 N. Y. 377; *Metropolitan Board of Excise v. Barrie,* 34 N. Y. 657; *People ex rel. McMullen v. Shepard,* 36 N. Y. 285; *Metropolitan Board of Health v. Heister,* 37 N. Y. 661; *People ex rel. Board of Comm'rs v. Oneida Co.* 170 N. Y. 105, 62 N. E. 1092; *Allison v. Welde,* 172 N. Y. 421, 65 N. E. 263; *People ex rel. Met. St. R. Co. v. Board of Tax Comm'rs,* 174 N. Y. 417, 67 N. E. 69.

We can see no reason to disagree with the views thus expressed, at least as to such functions as are obviously not essential to the existence of counties, cities, villages, and towns, or to their efficiency to accomplish those purposes for which the constitution employs them, or such powers as are not essentially characteristic of specific local officers named in the constitution and by it required to exist and persist. *State ex rel. Crawford v. Hastings,* 10 Wis. 525; *McCabe v. Mazzuchelli,* 13 Wis. 478; *State ex rel. Kennedy v. Brunst,* 26 Wis. 412; *State ex rel. Sweet v. Cunningham,* 88 Wis. 81,

57 N. W. 1119, 59 N. W. 503. The general principle seems to be assumed in *State v. Douglas,* 26 Wis. 428; *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614, 14 N. W. 844; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797.

That providing juries for the courts of the state is not so essential to the existence and efficacy of a county is too obvious to justify much discussion. The trial courts, of which our circuit court is the lineal descendant, were not local, but were part of the judicial branch of the central government long before the law of England became the common law of the United States, and it was but an accidental result of the fact that the justices *in eyre* were accustomed to hold court in each of the counties that they made use of the officers of the county to select men from whom juries in individual cases might be drawn. This is apparent from the fact that from very early times the power of such courts was recognized to supply defect or failure of action on the part of such county officers by making up a jury list of their own with the aid of a person temporarily appointed, called an *elisor.* Both in England and in the older states jury lists have as often been supplied by town officers or officers of election districts as by county officers, and at the time Wisconsin became a separate territory they were selected by the assessors of the several townships, and, in case of failure, by express direction of the judges of the court. At the time of our constitution the function of making up a list from which jurors were to be drawn was imposed upon the county boards, then consisting in some counties of three commissioners elected by a vote of the entire county, and in others of supervisors chosen one by each town. The drawing of the jury involved attention of the clerk of the court, of the sheriff or under-sheriff, and of a justice of the peace. This method was generally continued by the Revised Statutes of 1849 until about 1861, when the county boards were made up of representatives of the respective assembly districts; where-

upon the selection of the jury list was divided between the county board and officers of the towns, villages, and cities, the latter making up a list in their respective localities of persons from whom the county board must make its selection. It should also be noted that during the early history both of territory and state there existed counties organized for all purposes of county government except for judicial purposes, they being for the latter purposes annexed to other counties. At the date of the constitution such counties not organized for judicial purposes in no wise participated in the selection of jury lists, the court sitting in the county to which they were annexed being supplied with a jury by machinery which wholly ignored such annexed counties.

From this brief summary it is obvious that neither before nor since our constitution was adopted has it been deemed by legislators essential to the existence or purposes of a county that county officers should select the list from which the jury for a term of court was to be drawn, or control the drawing from such list. In *Perry v. State,* 9 Wis. 19, was sustained a statute authorizing the judge of a circuit court to select grand and petit jurors for his term of court, and it was said that the manner of designating the persons who are to act as jurors at any term of court is clearly within the control of the legislature. A careful examination of every reference to counties and their functions contained in the constitution convinces us that there are none of those functions which will be impaired or embarrassed by intrusting either the make-up of jury lists or the selection of jurors therefrom to others than county officers. Hence we reach the conclusion that within the legislative power conferred by the constitution upon the legislature of this state is full authority to locate this function wherever deemed best, and, if the legislature should conclude to confer it otherwise than upon a county or a city, then most obviously the officer to whom it would be intrusted would not only be neither a county nor a city of-

ficer, but his office would be a new one in the sense so aptly defined in the *Draper Case* (15 N. Y. 532) and the other New York cases above referred to.

Before we exert that highest of judicial prerogatives to declare that the concurrent legislative branch of the government has attempted to act beyond its competency, we must be convinced thereof beyond reasonable doubt, and, if there might within reason be any theory or purpose which would bring the questioned legislation within its power, it is our duty to assume such basis for it. From the views already expressed we think it necessarily results that it would be entirely competent for the legislature to adopt a policy that the selection of jurors should be conferred upon the circuit courts of the state. The jurors are called into being for the purpose of enabling those courts to perform their judicial functions; and, while there may be peril of oppression in too close intimacy between the court and the original make-up of the jury list, there may be other perils involved in the localization of such selection or in intrusting it to officers more likely to be affected by local excitement or political influence. This, however, presents merely a field of public policy in which discretion and selection are intrusted, not to the courts, but to the legislature, and over their determination none but the electorate can properly sit in review. In deference to the duty of high respect which we owe to all attempts by the legislative branch of the government to perform its duties, we feel bound to conclude that the legislation now attacked at least reasonably evinces the purpose to make the selection of jurors a function of the judicial circuits to be exercised by the judges thereof through the medium of commissioners as aids to such judges in each county of the circuit, and that, such purpose existing, there is no obstacle in the policy of local self-government evinced by the constitution. This being the legislative purpose, the function ceases to be any part of county government, and those who

execute it are not county officers, although their activities are confined to specific counties. If the circuit judge were himself intrusted with the duty of preparing a jury list for use of the court in each county of his circuit, he obviously would not thereby become an officer of each such county, nor are his assistants in that field such, although he invokes the aid of each only in a single county. One of the constituent elements of a county officer is that he shall execute some of the functions of county government. The county must act through him. *Sheboygan Co. v. Parker,* 3 Wall. 93; *State ex rel. Scott v. Trousdale,* 16 Nev. 357; *State ex rel. Clark v. Stanley,* 66 N. C. 59; *Att'y Gen. ex rel. Adams v. Mc-Caughey,* 21 R. I. 341, 43 Atl. 646; *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N. W. 712. If such be not the case, it matters not that his activities are territorially coincident with some county or that his compensation is paid from the county treasury, although such facts may be very significant as to one who does perform a county function.

A further contention that defendants are such county officers as sec. 4, art. VI, of the constitution commands shall be elected by the electors is fully met and refuted by *State ex rel. Williams v. Samuelson, supra.*

2. Another earnest contention is made against this statute that it imposes upon the circuit judges duties of an executive or administrative character which they cannot receive. This contention might open the door to a wide field of research and discussion which has been very recently illuminated by the supreme court of Minnesota in *State ex rel. Young v. Brill,* 111 N. W. 639, where it was held that, even under a constitution like ours, which merely confers all executive power upon the governor, the power of appointing to office is excluded from the judiciary for the stated reason that such appointing power is distinctly executive. The most significant case in Wisconsin on this subject is *Foster v. Rowe,* 128 Wis. 326, 107 N. W. 635, where we held that the ap-

20]                JANUARY TERM, 1907.                475\:

State ex rel. Gubbins v. Anson, 132 Wis. 461.

pointment of an appellate commission to review the equaliza-
tion of assessments in a county may constitutionally be im--
posed upon the circuit judge. That case, however, does not:
fully conclude the question, since it has been held that such
commissioners are not officers at all, but merely a temporary·
tribunal to review in a *quasi*-judicial manner certain steps.
in tax proceedings. *State ex rel. Brown Co. v. Myers,* 52·
Wis. 628, 632, 9 N. W. 777. It will be unnecessary on the-
present occasion to enter broadly upon this field of discussion.
It may be conceded that, generally, the appointment to office·
is within the executive function, but there remains the ex--
ception that within the duties of both the judicial and leg--
islative branches of the government are certain administra-
tive acts, in aid and execution of the judicial and legislative·
functions, which need to be performed by means of assist-
ants, and that, as either the legislature or the judiciary·
might, nay must, constitutionally perform such acts, they
may select those who are to aid them in such performance.
It was very early declared by the members of this court that.
the function of selecting its janitor was inherent. *In re Jan-
itor,* 35 Wis. 410. Upon the same principle, the justices of ̄
this court are trustees of the law library, provided primarily
to facilitate the performance of its duties by this court, and
as such trustees they are authorized to select and appoint the·
librarian. The reporter of this court is to be appointed by
the court, as also its clerk. The legislature, too, in per--
forming its duty to make the laws must have clerical assist-
ants, and has immemorially been recognized as vested with,
authority to select the persons who shall give such service.,
To these illustrations might be added many others, but they·
suffice to suggest both the necessity and the limits of the·
power of judicial officers, under the most restrictive view, to·
select their immediate aids in performing their constitutional ̄
duties. Such power is supported generally by the decided ̆
cases. *Rockwell v. Fillmore Co.* 47 Minn. 219, 49 N. W.,

690; *State ex rel. Douglas v. Westfall,* 85 Minn. 437, 446, 89 N. W. 175; *State ex rel. Young v. Brill, supra; Board of Comm'rs v. Gwin,* 136 Ind. 562, 36 N. E. 237; *State ex rel. Yancey v. Hyde,* 121 Ind. 20, 31, 22 N. E. 644.

Having concluded that the legislature has, within its rightful discretion, deemed wise to impose the selection of jurors upon the circuit courts of the state as a function thereof, we can entertain no serious doubt that appointment of jury commissioners to aid in so doing very legitimately falls within the principle just discussed. The courts cannot proceed to judgment, which is the consummation of their judicial function, without the aid of jurors, and we can see no reason to doubt that the machinery for obtaining such jurors with promptness and certainty and of suitable quality is so germane to the judicial function that there is no imposition of executive power in authorizing the courts or the judges thereof to select or direct such machinery. It is a practice which has authority from much of precedent approved by decision. *Perry v. State,* 9 Wis. 19; *Ex parte Virginia,* 100 U. S. 339; *People ex rel. Hawes v. Walker,* 23 Barb. 304; *Allison v. Welde,* 172 N. Y. 421, 430, 65 N. E. 263; *State v. Mounts,* 36 W. Va. 179, 14 S. E. 407; *State v. Kendle,* 52 Ohio St. 346, 39 N. E. 947; 23 Cyc. 538; 24 Cyc. 210; 21 U. S. Stats. at Large, 43, ch. 52, sec. 2.

3. The law in question is also assailed because, as asserted, it imposes unconstitutional tests upon persons to be selected as jury commissioners, in that it requires that they shall be citizens of the United States, qualified electors of this state, possessed of their natural faculties, and not infirm or decrepit, of good character, approved integrity and sound judgment, able to read and write the English language understandingly, and freeholders of the county for which the jury list is to be made. Some of the arguments apparently go to the length of contending that no qualifications whatever can be placed upon the eligibility to public office, but that question

State ex rel. Gubbins v. Anson, 132 Wis. 461.

has been fully set at rest in this state by *Fordyce v. State ex rel. Kelleher,* 115 Wis. 608, 92 N. W. 430, and *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N. W. 712, where it is unambiguously declared that qualifications reasonably germane to the duties which an officer must perform may be imposed as conditions of eligibility. We find nothing amongst the qualifications demanded by this statute which we are able to say is so impossible of relationship to the required duties as to compel us to deny it validity.

Some other grounds of invalidity of this statute are suggested by the briefs filed, but do not seem to us serious enough to warrant their discussion.

Our conclusion is that, by this statute assailed, the legislature has imposed the duty of selecting jurors upon the judicial circuits of the state, and that the office of jury commissioner is one either of the state or of such circuits and not a county office, and did not exist either in name or duties at the adoption of the constitution, but has been since created, so that the incumbents may be selected in legislative discretion. It results both that the relator, a private individual, has not legal capacity to maintain this action in the name of the state without first applying to the attorney general— sec. 3466, Stats. (1898),—and that the complaint fails to state facts inconsistent with defendants' title to their offices. Hence the demurrer was properly sustained upon both grounds.

*By the Court.*—Order affirmed.