The judge committed no error in his question to the jury as to what the prisoner entered the house for.

He left the answer to the jury. The burglary was properly charged and proven as against Mrs. Higgins. She was the only occupant of the house, and the front door was her sole protection, and entry there was aimed at Mrs. Higgins and no other person.

She locked the door, and it was an offense against her possession for the defendant to break it open with intent to steal. Neither section 503 of the Penal Code, or the case of Rodgers v. People, 86 N. Y. 360, is against this view.

The conviction and judgment should, therefore, be affirmed.

DYKMAN and PRATT, JJ., concur.

---

## Court of Appeals.

### March 24, 1893.

### PEOPLE v. CHARLES H. LAURENCE.

(51 St. Rep. 286; 137 N. Y. 517.)

1. **Larceny—What constitutes.**

   Where a person obtains possession of property from the owner for a special purpose by some device, trick, artifice, fraud or false pretense, intending at the time to appropriate it to his own use, and he subsequently does so appropriate it, and not to the special purpose for which he received it, he is guilty of larceny.

2. **Same.**

   In such case, it is essential for the people to show, not only that the person obtained possession of the property in that way, but that he did it animo furandi, with the intention at the time of subsequently appropriating it to his own use.

**3. Indictment—Larceny.**

> An indictment for larceny, which alleges, without setting forth the false pretenses, the commission of the crime of larceny in the form formerly used in common-law indictments, is sufficient.

**4. Same.**

> An indictment which charges that the defendant made the false representations and pretenses to obtain the possession of the cars from the owner for the special purpose alleged, with the intent at the time feloniously to deprive such owner of the cars and to appropriate them to his own use, and that after thus obtaining them he did appropriate them to his own use, and that by means of the false pretenses and representations alleged he did feloniously steal, take and carry away the two cars, states sufficiently the act constituting the crime of larceny.

**5. Same—Surplusage.**

> Surplusage does not vitiate an indictment.

Appeal from judgment of the supreme court, general term, fifth department, reversing judgment of the court of sessions of Niagara county, convicting defendant of the crime of grand larceny.

The defendant was brought to trial upon the following indictment:

"The grand jury of the county of Niagara, by this indictment, accuses Charles H. Laurence of the crime of grand larceny in the first degree, committed as follows:

"That said Charles H. Laurence, on or about the 10th day of August, in the year of our Lord, one thousand eight hundred and ninety-one, at the city of Lockport, within the county of Niagara, with force and arms, with intent to deprive and defraud the Lockport Street Railroad Company, a corporation duly organized and existing under and by virtue of the laws of the state of New York, of the proper goods and chattels hereinafter mentioned, and of the use and benefit thereof, and to appropriate the same to the use and benefit of him, the said Charles H. Laurence, did then and there feloniously, falsely and fraudulently pretend and represent to the said Lockport Street Railroad Company, if the said Lockport Street Railroad Company would permit him, the said Charles H. Laurence, to ship to

Buffalo two of the horse cars numbered respectively seven (7) and eight (8) of the said Lockport Street Railroad Company, that he, the said Charles H. Laurence, would have the said two horse cars so transformed that they might be run by electricity as a motive power instead of by horse power and return the said two cars so transformed to the barn of the Lockport Street Railroad Company in Lockport, with all possible speed, and ready and fit to be used upon the tracks of the said Lockport Street Railroad Company before the 1st of January, 1892, and the said Lockport Street Railroad Company, then and there believing the said false pretenses and representations so made as aforesaid by the said Charles H. Laurence, and being deceived thereby, was induced by reason of the the false pretenses and representations so made as aforesaid to deliver, and did then and there deliver to the said Charles H. Laurence the said two horse cars, numbered respectively seven (7) and eight (8) of the said Lockport Street Railroad Company, of the proper goods, chattels and personal property of the said Lockport Street Railroad Company, and the said Charles H. Laurence did then and there feloniously receive and obtain the said proper goods, chattels and personal property of the said Lockport Street Railroad Company by means of the false pretenses and representations as aforesaid, with intent to deprive and defraud the said Lockport Street Railroad Company, feloniously, and of the use and benefit thereof and to appropriate the same to his own use.

"Whereas, in truth and fact, the said Charles H. Laurence did not then, nor at any time, ship to Buffalo the said two horse cars, numbered respectively seven (7) and eight (8), to be transformed so that they might be run by electricity as a motive power instead of by horse power, and did not intend to have the said two horse cars so transformed, and did not return and intend to return the said two horse cars so transformed to the barn of the said Lockport Street Railroad Company, in the said city of Lockport, with all possible speed, and fit and ready to be used upon the tracks of the said Lockport Street Railroad Company before the first day of January, 1892, and has never since returned the said cars to the Lockport Street Railroad Company, but sold the said two horse cars and appropriated the proceeds thereof to his own use and benefit.

"And whereas, in truth and in fact, the pretenses and representations so made, as aforesaid, by the said Charles H. Laurence, to the said Lockport Street Railroad Company, were then and there in all respects utterly false and untrue, as he, the said Charles H. Laurence, at the time of making the same, then and there, well knew.

"And the said Charles H. Laurence, on the day and in the year aforesaid, at the city of Lockport, within the said county of Niagara, aforesaid, in the manner and form aforesaid, and by the means aforesaid, obtained from the possession of the owner thereof, the said Lockport Street Railroad Company, the said two horse cars, numbered respectively seven (7) and eight (8), of the worth and value of $375 each car, with intent to deprive and defraud the true owner, the said Lockport Street Railroad Company, of its property, and of the use and benefit thereof, and to appropriate to the use of him, the said Charles H. Laurence; and the said two horse cars, he, the said Charles H. Laurence, from the possession of the true owners thereof, the said Lockport Street Railroad Company, by means of false pretenses and representations so made as aforesaid, feloniously did steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace of the People of the state of New York and their dignity.

"P. F. KING,

"District Attorney of Niagara County."

The defendant was convicted of larceny, and upon appeal to the general term the court reversed his conviction, and directed his discharge. The district attorney then brought this appeal.

P. F. King, dist. att'y, for appellants.

Richard Crowley, for respondent.

EARL, J.—In the early history of English jurisprudence a prisoner came to his trial under great disadvantages. He was not permitted to have counsel, or witnesses, or a copy of the indictment, and hence very technical rules were evolved for the construction of indictments and the conduct of the trial, and thus a prisoner was now and then enabled to make a successful

defense. But for many years more humane views of the condition and rights of persons charged with crime have come to prevail, and now a person indicted proceeds to his trial under greater advantages than he would possess if he were defending a civil action. Hence, the technical rules which in ancient times frequently served a useful purpose have been greatly relaxed, indeed, entirely abrogated. By our Code of Criminal Procedure all forms of pleadings in criminal actions before existing were abolished, and the sole requisite of an indictment, besides the formal parts, is that it shall contain "a plain and concise statement of the act constituting the crime, without unnecessary repetition." Code Crim. Pro. §§ 273, 275. And it is declared that the indictment is sufficient if the act or omission charged as the crime is plainly and concisely set forth and stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the rights of the case. Section 284. To sweep away all mere technicalities it is provided in section 684, that "neither a departure from the form or mode prescribed by this Code, in respect to any pleadings or proceedings, nor an error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right," and, then, in section 542 it is provided that after hearing the appeal from a judgment of conviction "the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

In all criminal proceedings the People, as well as the defendants, have rights, and the foregoing statutory rules should be fairly enforced and administered, so as to foster the public policy which they embody, and to serve the ends of criminal justice.

Larceny is defined in section 528 of the Penal Code so as to include not only the offense as constituted at common law and under the Revised Statutes, but also embezzlement, obtaining property by false pretenses and the felonious breach of a trust. To constitute larceny it is not needful that the property stolen should have been taken from the possession of the owner by a trespass; but if a person obtains possession of property from

the owner for a special purpose by some device, trick, artifice, fraud or false pretense, intending at the time to appropriate it to his own use, and he subsequently does appropriate it to his own use, and not to the special purpose for which he received it, he is guilty of larceny. And so it has repeatedly been held. Smith v. People, 53 N. Y. 111; Loomis v. People, 67 id. 322; People v. Morse, 99 id. 662. In such a case it is essential for the People to show not only that the person obtained possession of the property in that way, but that he did animo furandi, with the intention at the time of subsequently appropriating it to his own use.

The People do not claim that the indictment shows a larceny by obtaining property by false pretenses, because the pretenses were in their nature promissory. But they claim that by certain false pretenses the defendant, intending at the time to appropriate the two cars to his own use, obtained possession of them from the owner for a special purpose, and that he did subsequently convert and appropriate them to his own use, and thus committed larceny. There can be no doubt that the facts thus claimed constitute larceny. The question for us to determine now is whether the indictment charges the crime of larceny in compliance with the requirements of the Code of Criminal Procedure? It would have been sufficient if the indictment, without setting forth the false pretenses, had alleged the commission of the crime of larceny in the form formerly used in common law indictments. And such was the form of the indictments in the cases above cited. The crime being properly charged in such an indictment, the facts constituting it could be proved upon the trial. People v. Dumar, 106 N. Y. 502; 11 St. Rep. 19.

A careful reading of this indictment leaves no doubt upon our minds that it does state the act constituting the crime. It charges that the defendant made the false representations and pretenses to obtain the possession of the cars from the owner for the special purpose alleged, with the intent at the time feloniously to deprive the owner of the cars and to appropriate them to his own use, and that after thus obtaining them he did appropriate them to his own use, and that by means of the false pretenses and representations alleged he did feloniously steal,

take and carry away the two cars. There averments contained every element requisite to constitute the crime of larceny. In the opinion pronounced at the general term it is intimated that the indictment would have been good "if it anywhere charged the defendant with obtaining possession of the property by means of the alleged false pretenses, and afterward, with felonious intent, appropriating it to his own use." It is very plain that the indictment does so charge. It is further stated in the opinion as follows: "There is the charge that the defendant obtained possession of the property by the false pretenses and representations alleged; but this is coupled only with the charge that possession was thus obtained with the intent to appropriate it to his own use, and there is nowhere the allegation that after so obtaining the possession, he did actually so appropriate it." The learned general term must have been under some misapprehension, because the indictment plainly charges that after the defendant by the false pretenses and representations alleged, obtained the possession of the cars, he sold the said two cars and appropriated the proceeds thereof to his own use and benefit." It is, therefore, impossible, we think, to say that the crime of larceny is not found in the language used in the indictment.

It is not a legal ground of attack upon this indictment that it contains more than was necessary under the provisions of the Code. It has always been the rule that surplusage no more vitiates an indictment than a pleading in a civil action. Lohman v. People, 1 N. Y. 379; Dawson v. People, 25 id. 399. While it was unnecessary for the People to set forth in the indictment the pretenses by which the defendant obtained possession of the property, the allegations in reference thereto instead of being harmful must have been beneficial to him, as they enabled him to know before the trial the precise facts upon which the People relied to prove the larceny. The indictment contains a plain statement of the acts constituting the crime without any repetition, and while it is not as concise as it might have been, yet so long as it is not so prolix as in any way to prejudice the defendant in making his defense, he cannot urge the prolixity as a ground for the reversal of conviction.

We are, therefore, of opinion that this indictment, tested by

the rules prescribed in the Code of Criminal Procedure, or by those which previously existed, was sufficient to authorize the conviction of the defendant for the crime of larceny, and that the general term erred in reversing the conviction and discharging the defendant on the ground of the insufficiency of the indictment.

But it does not, however, follow that we should reverse the judgment of the general term and affirm the conviction. We think there was some evidence for the consideration of the jury tending to establish the crime charged. We express no opinion as to the weight of the evidence, as that is not within the province of this court. The defendant had the right to have his case reviewed upon the evidence, at the general term, and that court, in the exercise of its discretion, could grant the defendant a new trial if it believed that the conviction was against the weight of evidence, or that justice required a new trial.

To the end, therefore, that the general term may exercise its discretion upon the evidence, its judgment should be reversed and the case remanded to that court for a further hearing.

All concur.