THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES HUGHES, Appellant.

*Larceny — distinction between larceny and false pretenses — evidence of similar offenses — stealing from a partner.*

Where the owner of property is induced by trick or device to part with its possession, intending to transfer an interest in or the title to the property, the person thus obtaining it is guilty of the crime of obtaining goods under false pretenses, an offense now requiring a special count as a form of larceny, but he is not guilty of a larceny at common law.

Where, however, a person, employing similar methods, obtains possession of property from its owner for a special purpose, really intending to appropriate it to his own use and not to the special purpose, he is guilty of a common-law larceny.

In the former case the owner intends to confer the title upon the other person, while in the latter case he intends to confer possession upon him for a special purpose.

Upon the trial of an indictment for larceny, it appeared that the defendant advertised for a partner; that the complainant called upon the defendant in answer to the advertisement, and was told by him that he was in the produce business and wanted a partner with $300; that the complainant drew this amount from a bank, and that upon again meeting the defendant a partnership agreement between the parties was drawn up by a lawyer; that the defendant then told the complainant that various articles of produce must be bought, and obtained $275 from the complainant for this special purpose; that at the same time he showed or tendered to the complainant a check upon a bank for $325; that as no purchases were made by the defendant with the money the complainant became suspicious; said that the check was worthless and demanded the return of his money; that the defendant refused to return it and said he would meet the complainant the next day; that he did not do this, and when the complainant met him subsequently in an accidental manner and accused him of swindling, he ran away and was not seen again until he was arrested.

*Held,* that he was properly convicted of larceny;

That upon the question of the defendant's intent it was proper to admit evidence of similar frauds committed by him;

That the court properly refused the defendant's request that the jury be charged that if they found that the complainant and defendant were legal partners in business, even if the defendant intended to steal, it would not be a crime.

APPEAL by the defendant, James Hughes, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York, rendered on the 4th day of April, 1895, convicting him of the crime of grand larceny in the second degree.

*Hugh O. Pentecost,* for the appellant.

*John D. Lindsay,* for the respondent.

VAN BRUNT, P. J.:

The defendant was charged with stealing $275 from one Frederick Challacomb. It appeared upon the trial that the complainant answered an advertisement which appeared in the New York *World,* stating that he was looking for a place of business to go in of the kind referred to in the advertisement, and that he had $300 which he was willing to put up with an honest man. On the twentieth of February the defendant called upon the complainant at his house in Elizabethport, New Jersey, introducing himself as the writer of the advertisement, and explaining that he had called in answer to the complainant's letter. The defendant told the complainant that he was in the produce business, and that he was making from twenty-five to fifty dollars a week, and that he wanted an honest man for a partner who would put up $300; that he wanted a man who was not afraid of work. After talking the matter over and learning that the complainant had the necessary amount in the bank, it was arranged that the complainant should meet the defendant at the foot of Liberty street in the city of New York the following morning at half-past nine o'clock, and the defendant told complainant to have his bank book with him in case they should find a place suited to them, so that they would have the necessary funds to go on with the business. They met as agreed, and at the defendant's suggestion they went to look at stores. After looking at places in the neighborhood of Gansevoort Market, which the defendant said did not suit him, they went down to a man on the dock and bargained about some potatoes, but the defendant pretended to find the price too dear. The defendant then told the complainant that he must have some references, and took him to his home at No. 365 West Thirty-fifth street, where he introduced him to his mother, who told the complainant that her son was an industrious boy, and had formerly been in business with his father; that she would like to see him go into business with an honest man, and that she liked the complainant's appearance well. At the defendant's suggestion, the complainant then went over to

Williamsburgh, drew out his $300 in cash from the bank, and, returning to the city, met the defendant in the World building at two o'clock. He found him there in company with a man named Anhalt. The three went together to the office of a lawyer, where a co-partnership agreement in the usual form was drawn up, by which the defendant and the complainant agreed to become co-partners in business as produce commission merchants under the firm name of Hughes & Challacomb, and that each should contribute the sum of $300 to the business. The defendant told the complainant then that he had been buying and selling potatoes, and that he had lots of customers, and said that he must have 200 barrels of potatoes that night to be delivered the next morning. He said : " Let us go down to the docks and see how we can buy some potatoes, because I must have them to-night." This was about three o'clock in the afternoon. They went down to the dock and found the market closed. The defendant then said : "I must have those potatoes to-night; come along Washington street." They went along Washington street and into Kelly & Powers' store, and asked for potatoes. After bargaining there for some time they left the store, the defendant saying he would go along further and see if he could not do better. From there the parties went to a saloon, where the defendant said he wanted to buy oranges and apples, as well as potatoes, and figured up the cost at about $475. The defendant said he had no ready money, but he produced a check on the West Side Bank for $325, which he placed on the desk, and said to the complainant : " You have three hundred dollars, haven't you ? " The complainant said he had. The defendant said he thought they could not do better than buy the potatoes at Kelly's, and that they would go right back and buy them. Thereupon, at defendant's request, the complainant gave him his $300 in bills, and the defendant gave the complainant twenty-five dollars in small bills for " necessaries," and they went back to Kelly & Powers' place, together. They saw the salesman and endeavored to induce him to take a lower price, but not succeeding, agreed to purchase twenty-five barrels at two dollars a barrel. The defendant tendered in payment one of the complainant's $100 bills, but no change could be obtained, so it was agreed that the purchase should stand over until the morning, and the complainant deposited a five-dollar bill

Hun.]        First Department, December Term, 1895.

to bind the bargain. Upon leaving the place the defendant said to complainant: "We will go down and see if we can get some oranges." The complainant agreed to this, whereupon the defendant said : "I guess it is too late to do any business anyhow to-night." The complainant then said to the defendant: "You have got two hundred and seventy-five dollars in your pocket and aint going to do any business? I said, 'You haven't paid anything. I shall not trust you. You haven't put up any money.'" The defendant replied: "Why, here is my check on the West Side Bank. You must trust me, because I am trusting you. I am trusting my name to you." The complainant answered that his name didn't "amount to that," and that he wanted his money back. The defendant told him he couldn't get it back. The complainant said : "I don't want to trust you at all. I don't intend to trust you." The defendant said he would have to trust him until the next morning, when he would meet him at Kelly & Powers' to complete the bargain, and that meanwhile he would keep the money.

Naturally, the defendant failed to appear the next morning, and after waiting for three hours the complainant went home, where he found a telegram from the defendant saying that he would be at the appointed place at two o'clock on the twenty-third. He did not appear on the twenty-third, and on the twenty-fourth, when the complainant was at the same place, he saw the defendant passing by. He stopped him and said : "Now, I says, 'Look here, where is my money? You are a swindler;' I says, 'I found out you swindled a man eight days before this out of $250;' I says, 'Give me my money back, or go in there and buy that stuff.'" The defendant said : "I will do neither; I am going home." The complainant followed him to the corner of Thirty-fifth street and Ninth avenue, where he saw a police officer, to whom he said, in the defendant's presence : "Officer, I want this man arrested; he swindled me out of $275." The defendant started away, and was going up the stoop of his house, when the complainant overtook him and seized him by the coat tails. Thereupon the defendant's father and two other men set upon the complainant, and the defendant escaped. When the officer arrived, there was no trace of him, and the complainant never saw him again, until after his arrest upon a charge of swindling another man in a similar transaction.

Upon this state of the evidence, the jury very properly convicted the defendant of larceny, as charged in the indictment. From the judgment thereupon entered this appeal is taken.

The principal ground of the appeal seems to be that the evidence did not justify the conviction of the defendant of larceny at common law, although he might have been convicted of obtaining money by false pretenses, which, under our statute, has been made larceny, but which requires a special count in order to sustain a conviction.

It has been held, and the rule undoubtedly obtains, that if the owner of property, by trick or device, has been induced to part with the possession thereof, intending to transfer an interest therein or the title thereto, then a criminal appropriation of such property will not be a common-law larceny, but the crime of obtaining goods by false pretenses. (*People* v. *Dumar*, 106 N. Y. 502.) It is also equally well settled that to constitute a common-law larceny it is not necessary that the property stolen should be taken from the possession of the owner by a trespass; but if a person obtains possession of the property from the owner for a special purpose, by some trick, device, artifice, fraud or false pretense, intending to appropriate it to his own use, and not to the special purpose for which he received it, he is guilty of larceny; and so it has been repeatedly held. (*People* v. *Laurence*, 137 N. Y. 517, 522.) The distinction between the two cases being that the owner of the property stolen, in the case last cited, did not part with the possession of it with the intent of conferring title to the property upon the party charged with the larceny. In the first case the intent of the owner was to clothe the party with the title; in the second, the owner only gave him possession, not intending to clothe him with the title, but to use for a specific purpose.

It is urged upon the part of the defendant that the evidence established as matter of law the fact that the complainant intended to contribute the money in question as his share of the co-partnership fund and to clothe the defendant with the title thereto as his co-partner. It seems to us upon a consideration of this evidence that the jury had a right to find, and did properly find, that there was no intention upon the part of the complainant to clothe the defendant with the title to this property; but that it was given to him for the purpose of purchasing merchandise, and that it was

obtained from the complainant for that purpose; and that there was no intention whatever to contribute this money as part of the co-partnership capital until the defendant had paid in his promised contribution. It is clear that his check was not accepted as such; and that after the refusal of the defendant to purchase the merchandise which he had been talking about, he was viewed with suspicion, and there was no intention whatever upon the part of the complainant to make an absolute contribution of this money as co-partnership capital until the defendant had complied with his part of the agreement. The money was handed over to the defendant for him to invest in merchandise. Instead of that, he ran away with it; and it would appear, under all the rules applicable to cases of this description, that his conviction was entirely proper.

It is further urged that error was committed in admitting evidence in regard to similar frauds which had been perpetrated upon other persons whom he had succeeded in making his victims. This evidence seems to have been entirely competent upon the question of intent, which was a necessary ingredient of the crime with which he had been charged.

Various criticisms are also passed upon the charge of the learned judge who presided at the trial, most of which were not brought to the attention of the court in any respect at the trial. It is undoubtedly true that the court, in the interests of justice, even where no exception is taken, has the right to reverse for errors in the conduct of the trial. But the court will not encourage the practice of counsel in not calling the attention of the trial court to alleged errors committed during the progress of the trial when they could be corrected; and will not reverse, even if such errors appear, where it is satisfied of the guilt of the defendant. There seems to be no reason to doubt that the verdict of the jury in the case at bar was entirely in harmony with the interests of justice.

The court was requested to charge that "if the jury found that Challacomb and the defendant were legal partners in business, even if there was an intention to steal upon the part of the defendant, it would not be a crime." The court refused to charge this proposition and an exception was taken. It seems to be a novel proposition that because two men are partners neither of them has any rights or property in his individual possessions — which is the logi-

cal application of the proposition requested to be charged. This illustration shows the fallacy of the request.

The judgment should be affirmed.

Parker, J., concurred.

Judgment affirmed.