## Supreme Court—Appellate Division—First Department.

October, 1898.

## PEOPLE v. PERRIN H. SUMNER.

1. INDICTMENT—LARCENY.

An indictment for larceny at common law cannot be upheld by proof only of the procurement of property by false or fraudulent representations.

2. SAME.

Under an indictment for grand larceny charging that the prisoner "feloniously did steal, take and carry away" $1000, the property of another, it is competent for the prosecution to give evidence of larceny by trick and device; and according to all the cases, the test of the sufficiency of the proof to sustain the charge in the indictment is, did the complainant intend to pass title to the money mentioned in the indictment, or did he give that sum of money into the possession of the defendant for a special purpose to be applied to that purpose only, and did the defendant, instead of so applying that money, appropriate it to his own use?

3. SAME—COPARTNERSHIP.

Where a real estate broker falsely stated to the complainant, a party intended to purchase land, that another person was ready to purchase the same at an increased price, and, at the same time, proposed to make an arrangement with the complainant by which the profits of the resale should be divided between them, and by such means obtained money from him to be used for the sole purpose of paying it over to the vendor of the land, which was to be conveyed to the complainant when satisfied as to the title and value of the property, the case is not one in which one copartner gives money to another, to be used in the copartnership business. The money is given to be used only for a specific purpose and under special circumstances and conditions. The copartnership contemplated between the parties constitute them, not joint owners of the property to be purchased, but simply of the product of the sale thereof.

4. CRIMINAL LAW—LARCENY.

If a person obtains possession of property from the owner for a special purpose by some device, trick, artifice, fraud or false pretense, intending at the time to appropriate it to his own use, and he subsequently does appropriate it to his own use and not to the special purpose for which he received it, he is guilty of larceny.

5. SAME—FALSE PRETENSES.

If a person, through the fraudulent representations of another, delivered to him a chattel intending to pass the property in it, the latter

can not be indicted for larceny, but only for obtaining the chattel under false pretenses.

APPEAL from a judgment convicting the defendant of the crime of grand larceny in the first degree, and also from an order denying the defendant's motion for a new trial made upon the minutes.

A. H. Purdy, for appellant.

C. E. Le Barbier, for the People.

PATTERSON, J.—The real question involved in this appeal relates to the sufficiency of the proof to sustain the indictment. The appellant was convicted of the crime of grand larceny in the first degree, upon an indictment containing two counts. On the trial the second count was withdrawn, and the case then stood upon one which charged a larceny in these words:

"That said Perrin H. Sumner, late of the city and county of New York aforesaid, on the 16th day of July, in the year of our Lord one thousand eight hundred and ninety-six, at the city and county aforesaid, with force and arms, the sum of one thousand dollars in money, lawful money of the United States of America, and the value of one thousand dollars of the goods, chattels, and personal property of one Charles H. Goodwin, then and there being found, then and there feloniously did steal, take and carry away, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity."

It is urged by counsel for the appellant that the proof made on the trial of the cause did not establish the particular charge laid in the indictment of common-law larceny, but only that the prisoner was guilty of procuring money by false pretenses; and, inasmuch as he was not indicted for the latter offense, the conviction cannot stand. It has been explicitly decided in this state that an indictment for larceny at common law cannot be upheld only by proof of the procurement of property by false or fraudulent representations. People v. Dumar, 106 N. Y.

503, 13 N. E. 325. In that case, the court, by Danforth, J. said :

" In order to constitute larceny, there must have been a taking of personal property against the will of the owner. The other offense could not be confounded with it. In either case, the property may have been obtained by artifice of fraud ; but if in the one the owner intended to part, with his property absolutely, and convey it to the defendant, but in the other intended to part with the temporary possession for a limited and specific purpose, retaining the ownership in himself, the latter case would be larceny, but the former would not. It was therefore uniformly held that if a person, through the fraudulent represen. tations of another, delivered to him a chattel intending to pass the property in it, the latter could not be indicted for larceny, but only for obtaining the chattel under false pretenses."

In the case of People v. Hughes, 91 Hun, 358, 36 N. Y. Supp. 496, the court said by Van Brunt, P. J., that :

" It is equally well settled that, to constitute a common-law larceny, it is not necessary that the property stolen should be taken from the possession of the owner by trespass; but if a person obtains possession of the property from the owner for a special purpose, intending to appropriate it to his own use, and not to the special purpose for which he received it, he is guilty of larceny ; and so it has been repeatedly held (People v. Laurence, 137 N. Y. 517, 33 N. E. 547); the distinction between the two cases being that the owner of the property stolen in the case last cited did not part with the possession of it with the intent of conferring title to the property upon the party charged with the larceny."

In the case of People v. Laurence, supra, it is pointed out that neither under the Penal Code nor at the common law was it essential, to constitute the crime of larceny, that the property should have been taken from the possession of the owner by a trespass—

" But if a person obtains possession of property from the owner for a special purpose by some device, trick, artifice, fraud or false pretense, intending at the time to appropriate it to his own use, and he subsequently does appropriate it to his own

use, and not to the special purpose for which he received it, he is guilty of larceny; and so it has been repeatedly held. Smith v. People, 53 N. Y. 111; Loomis v. People, 67 N. Y. 322; People v. Morse, 99 N. Y. 662, 2 N. E. 45. In such a case it is essential for the people to show not only that the person obtained possession of the property in that way, but that he did it animo furandi with the intention at the time of subsequently appropriating it to his own use."

It is very plain that, upon the count of the indictment upon which the prisoner was tried, it was competent for the prosecution to give evidence of larceny by trick and device; and, according to all the cases, the test of the sufficiency of the proof to sustain the charge in the indictment is: Did the complainant, Goodwin, intend to pass title to the $1,000 mentioned in the indictment, or did he give that sum of money into the possession of the defendant for a special purpose, to be applied to that purpose only, and did the defendant, instead of so applying that money, appropriate it to his own use? An examination of the evidence adduced upon the trial establishes each of the facts necessary to the maintenance of the charge. That the defendant prepared and executed an adroit and somewhat complicated scheme for obtaining the complainant's money by exciting his cupidity, and inducing him to become a party to a transaction from which a large profit was promised, and that the intent of the defendant was merely to get from the complainant the $1,000, that he might keep it for himself, is too plain for contradiction.

It is immaterial that the defendant's acts in consummation of his purpose were of such a character as to constitute contract relations in legal form between him and the complainant. The trick or device was none the less a guilty act because its accomplishment was sought through lawful forms. The defendant was a broker, seeking to negotiate a sale, for his principals, of land in New Jersey. That he falsely represented to the complainant the condition and value of that land is uncontradicted. That he solicited the complainant to purchase the land, under a representation that he had an arrangement made by which it could be transferred to another party for many times the price

which the complainant would pay, it also uncontradicted; that is to say, he offered the property to the complainant at $9,000, declaring that he had another person to whom it could be immediately resold at the price of $25,000 ; and, at the same time, he sought to make an arrangement with the complainant by which the profits of a resale should be divided between them. It is apparent he had no such purchaser ready to pay $25,000 ; but, on the contrary, the only third party in any way standing in the relation of an actual or nominal purchaser was one Lancaster, with whom the defendant had negotiated or made a contract for the sale of the property at $6,000. The complainant had paid $200 to the defendant on the 12th of June, 1896, on account of the purchase price of $9,000. On the 14th of June, the complainant, being in Albany, was summoned by a telegram from the defendant to New York, and requested to bring with him $1,000, which is the amount mentioned in the indictment, and the sum the defendant wished to get into his possession. On the complainant reaching New York, he was told by the defendant that a man named Lancaster had seen the owners of the property, who, upon the payment of one thousand dollars, would reduce the price from nine to six thousand dollars. The complainant asked the defendant if he had to pay Lancaster any money on account of the transaction, and he said : " No ; not a cent. He does it out of friendship for me. I may have to give him a new hat or a dinner." The representation made by the defendant was that the $1,000 was to go to the owners of the land. On the 17th of June, the $1,000 was delivered to the defendant ; the uncontradicted testimony of the complainant being that he told the defendant he would deposit $1,000 in his hands, " provided he would not pay it to anybody until I told him, as I wanted to examine the property, and see that the title was all right before any money was paid over to anybody. And he said, ' All right, I will agree not to pay it over to anybody until you say ; ' and I gave him a thousand dollars in bills." That $1,000 was never paid by the defendant to any one, so far as appears. He declared to the complainant that he was to pay it to the owners of the property. Their testimony shows that he declared to them that he was to pay it to Lan-

caster. When the complainant gave the defendant the money, on the 17th of June, a receipt dated the day before was given by the defendant, which is as follows :

"Received from Charles H. Goodwin one thousand two hundred dollars, being on account of purchase of nine hundred acres of land in Sussex county, New Jersey, as per argeement. Price $6,000 ; $2,000 cash, and $4,000 mortgage on said land."

It is true that, at the time this receipt was given, a certain agreement had been made between the complainant and the defendant respecting the division of profits between them upon a resale of the land. The complainant agreed to give and pay over to the defendant or his assigns one-half of all that the land might sell for ; that is to say, one-half of all sales of timber made from the land, and one-half of all the profits on the sales of land that should be made, such profit to be ascertained after deducting the cost of the land and expenses. The promise of the defendant that he would not part with the $1,000 was, according to the testimony of the complainant, made on the 17th of June, at the time the money was handed to the defendant. It is evident that the complainant did not in any way intend that this $1,000 paid on June 17th should ever be retained by the defendant for his own use. It is also evident that it was intended by the complainant that the defendant should not part with it until the complainant was satisfied as to the title and value of the property, and should give directions that it be paid over to the sellers of the land. It was not given by one co-partner into the hands of another, to be used for the co-partnership business ; but it was given by a purchaser of land to a broker, to be used for a specific purpose, and only under special circumstances and conditions ; for the partnership contemplated between the parties did not constitute the defendant a joint owner of the property to be purchased, but the interest which he was to have was simply in the product of the sales of land and timber, and the title to which was to be in the complainant, and no one else. When the $1,000, therefore, was delivered into the possession of the defendant, it was exclusively for a special purpose, not to be paid to the sellers until direction was

given so to do, and they never received a dollar of it. It was not delivered to the defendant, therefore, in the relation of or as a co-partner. The terms of the receipt do not affect this view of the subject. The recital in it that the money is paid "as per agreement" does not refer to a co-partnership agreement, so called. There is nothing in that agreement concerning the $1,200 mentioned in the receipt, or any part of it. The words "as per agreement," in the receipt, the jury must have found, and were justified in finding, related to the particular and distinct agreement made by the defendant that he would not part with the $1,000 until the complainant was satisfied as to the title and value of the property.

Upon an examination of the whole record, it seems to be apparent that the proof was sufficient to show that, from the beginning of the defendant's transactions with the complainant respecting this land and money, he was pursuing a scheme to get $1,000 from the complainant by trick and device. The owner intended to part with possession, but not with the title to the money, except for the special purpose and under special circumstances. That makes the difference between false pretenses and larceny. Weyman v. People, 4 Hun, 511, affirmed 62 N. Y. 623; Kelly v. People, 6 Hun, 509; Smith v. People, 53 N. Y. 111.

The judgment appealed from should be affirmed. All concure, except McLAUGHLIN, J., dissenting.

McLAUGHLIN, J. (dissenting.)—The defendant was convicted of the crime of grand larceny in the first degree. The indictment, except the formal parts of it, upon which the conviction was obtained, reads as follows :

" That said Perrin H. Sumner, late of the city and county of New York aforesaid, on the 16th day of July, in the year of our Lord one thousand eight hundred and ninety-six, at the city and county aforesaid, with force and arms, the sum of one thousand dollars in money, lawful money of the United States of America, and the value of one thousand dollars of the goods, chattels, and personal property of one Charles H. Goodwin then and there being found, then and there feloniously did steal

take, and carry away, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity."

At the conclusion of the trial, a motion was made for a new trial, upon the ground that the verdict was against the law and weight of evidence; and from the order denying the same, and the judgment of conviction, the defendant has appealed.

Upon the trial it appeared that on the 11th day of June, 1896, the complainant, Charles H. Goodwin, a real estate broker, went to the office of the defendant, also a real-estate broker, and there met him for the first time. During the course of an interview which then took place between them, Goodwin was informed by the defendant that he had for sale some 900 acres of land, situate in the state of New Jersey, which the owners where willing to sell for $9,000, but which was worth much more; that he had a party to whom he could immediately sell the land for a much larger sum than the price asked, and, if in a position to do so, he could realize several thousand dollars in profits; that he could not personally make the purchase and take the title, inasmuch as he represented the owners; and he suggested as a way of obviating the difficulty that Goodwin make the purchase, and take the title, and that whatever profits were realized by a resale be divided between them. The defendant also stated that, if Goodwin would make the purchase, all the money that it would be necessary for him to advance would be $200, since the party to whom the resale could be made would pay cash. He also made other statements as to the actual value of the land, its location, and the timber upon it. At the conclusion of the interview, Goodwin said he would think the matter over, and let the defendant know whether he would make the purchase or not, on the following day. On the following day, he returned to defendant's office, notified him that he had decided to make the purchase, and then paid the $200 which the defendant had stated the day before it would be necessary for him to advance. The payment was made by a check payable to the order of defendant, which defendant immediately, in the presence of Goodwin, indorsed, payable to the order of the American Express Company. The parties then

separated, Goodwin returning to Albany, where he resided; and nothing further was heard from defendant until two days later, when Goodwin received a telegram from him saying: " Delay dangerous; come first train; bring thousand dollars cash; greater bargain timber land; will explain; answer." Goodwin answered: " Telegram received. Will call at your office Monday." On Monday Goodwin did call, and the explanation given by defendant of his telegram was that, under an arrangement which he had recently made with the owners of the land, the purchase price of it would be reduced from $9,000 to $6,000, provided a further cash payment of $1,000 was immediately made, and he was fearful, if there was any delay in making this payment, that the owners would change their minds. The terms and conditions of the sale were again discussed, the defendant, according to Goodwin's testimony, saying :

" That there would have to be $800 paid in thirty days, and a $2,000 mortgage given at 5 per cent, and there was already a mortgage on the property of $2,000, which would make the $6,000. The $1,200 in this case would be all that would be required, because he had his party that was going to take the property, and he would turn it within thirty days, and it would not be necessary to pay out any more money than the $1,200 if I would advance the $1,000 at this stage. I left him, and told him I would see him the next day."

The next day Goodwin returned, and had a further discussion as to the transaction, the result of which was that he then decided to, and did, advance the $1,000 required; and this is the sum which it is alleged the defendant then stole from him. Before Goodwin, however, advanced the $1,000, he drew an agreement between himself and the defendant which recited: that he (Goodwin) had purchased the land in question, and that he was to pay to the defendant one-half of all the profits realized on a resale of the same. When he paid the $1,000 to the defendant, he took from him a receipt, which reads as follows :

" New York, June 16, 1896.

" Received from C. H. Goodwin one thousand dollars, being on account of purchase of nine hundred acres of land in Sussex.

county, N. J., as per agreement. Price, six thousand dollars; $2,000 each, and $4,000 in mortgage on said lands.

P. H. SUMNER."

By agreement, the owners of the land, Johnson & Smith, were sent for by defendant; and on the following day a formal contract of sale was entered into between them and Goodwin. This contract provided that the owners were to sell to Goodwin the land for $6,000, which, according to the terms of the contract, was to be paid as follows: "One thousand two hundred dollars on the execution hereof ($1,200); eight hundred dollars on or before thirty days from the date hereof ($800);" ($2,000 by giving a mortgage on the premises; and the remaining $2,000 by taking the premises subject to a mortgage for that amount already thereon. The contract further provided that the owners, on receiving the payments at the time and in the manner specified, were to execute and deliver to Goodwin a proper deed containing a general warranty, etc. This contract was, according to the testimony of Goodwin, executed in duplicate, one copy being delivered to, and thereafter retained by, him, and the other left with the defendant. Two days later, Goodwin, in company with one of the owners, examined the land, and at the conclusion of such examination he requested that a deed be produced at Sumner's office, on the following Monday, which was the day which had previously been agreed upon. And the day after the examination he met the defendant, and, in response to an inquiry as to how he "found things," he replied: "I told him that there was a large tract of land, etc. I did not give him any idea but what I was satisfied as far as that time was concerned." The first intimation that defendant had that Goodwin was not satisfied was when he and his attorney several days later called, and asked him if "he had paid any money over." It also appeared upon the trial that Smith & Johnson, prior to the contract with Goodwin, had entered into a contract to sell the same land to one Lancaster, for $3,500; and, in order to make the contract with Goodwin, they authorized the defendant to retain, for the purpose of procuring a cancellation of that contract, and for his commissions for making the

sale to Goodwin, the first $1,200 paid by Goodwin; and, before they entered into the contract with Goodwin, they acknowledged having received from the defendant the sum of $1,200, "being sum paid on account of contract made by Charles G. Goodwin for nine hundred acres of land in Sussex county, N. J., for $6,000." It also appeared that the defendant did in fact procure a cancellation of the Lancaster contract.

I have thus referred at length to the facts established upon the trial, for the purpose of showing that the conviction cannot stand, unless we are prepared to ignore, not only the provisions of the Code of Criminal Procedure relating to an indictment, but also the conclusion of the court of appeals relating to the same subject. The Code of Criminal Procedure (sections 254 273–275) provides that an indictment must not only specify the crime, but must also contain a statement of the act which the defendant is alleged to have committed constituting the crime. The purpose to be accomplished is manifested. It is to notify a defendant in advance of the trial of the act which the people allege has been committed by him, and for which he is to be tried. The indictment here, it will be observed, charged the defendant with the crime of grand larceny. The act therein stated is that the defendant "feloniously did steal, take, and carry away" the one thousand dollars therein mentioned. This was the act charged, and this was what the jury found the defendant did; and the record before us fails to disclose any evidence to prove the act or sustain the finding. The most that can be claimed, if indeed that can, giving to the evidence the most favorable consideration possible, is that the defendant obtained possession of the money by means of false and fraudulent representations or statements as to the value of the land, the opportunity to resell, and the profits to be realized. But this was not the act charged in the indictment. The act charged was larceny as defined at common law, which cannot be sustained by proof of the procurement of property by false and fraudulent representations.

This is precisely what the court of appeals held in People v. Dumar, 106 N. Y. 503, 13 N. E. 325. In that case the indictment charged that the defendant "unlawfully and feloniously

did steal, take, and carry away " certain perperty therein described. The proof showed that the possession of the property was obtained by false and fraudulent representations. In reversing the judgment of conviction, the court of appeals, by Danforth, J., said:

"The case presented and the evidence offered all tended to show that the defendant did not commit the act charged in the indictment, but did commit the act described in the second alternative of the statute, viz. obtaining property from the possession of the true owner by color or aid of false representations or pretenses, or a false token or writing.   *   *   *   The accused could not fail to understand from the indictment that he was charged with the crime of grand larceny. In that respect the Code was complied with. It stated, also, a particular act as constituting the crime. In that respect, also, the Code was complied with. The difficulty is that the act stated was not proven, and that the act proven was not stated."

Here the indictment charged, as we have already seen, that the defendant " feloniously did steal, take, and carry away " the one thousand dollars referred to, and the record shows that Goodwin parted with the possession of his money by reason of false and fraudulent representations. The act stated in the indictment, therefore, was not proven, and the act proven was not stated in the indictment. This brings the case directly within the rule laid down in the Dumar Case, and necessitates a reversal of the judgment.

But it is said the conviction can be sustained because the defendant obtained possession of the money for a special purpose, intending at the time to, and thereafter did, appropriate it to his own use, and not to the special purpose for which it was delivered to him. It is undoubtedly true that, to constitute larceny as defined at common law, it is not necessary that the property stolen should have been taken from the possession of the owner by a trespass. If one obtains possession of property for a special purpose, by fraud or false pretenses, intending at the time to appropriate it to his own use, and thereafter does appropriate it to his own use, and not to the special purpose for which he received it, it has been held that he is guilty of com-

mon-law larceny.   People v. Laurence, 137 N. Y. 517, 33 N.
E. 547; People v. Hughes, 91 Hun, 354, 36 N. Y. Supp. 493.
But what was the special purpose for which this money was
delivered ?   It was to purchase certain land, and it was so ap-
plied.   The evidence is overwhelming that Goodwin, when he
delivered the money to defendant, intended to, and did,
pass the title to it :   (1) The agreement as to profits, drawn by
himself at the time the money was paid, recited :   " I hereby
agree to give and pay over to P. H. Sumner, or order, or his
assigns, one-half of all that a certain tract of land containing
nine hundred acres,   *   *   *   purchased by me, may sell for."
(2) The receipt which he took from defendant shows the pay-
ment of the mony " on account of purchase."   (3) The con-
tract of sale declares that the money was paid to apply on the
purchase.   (4) The conduct of Goodwin after he had examined
the land shows the same thing.   And it does not change the
situation or the character of the transaction because Goodwin
testified upon the trial :   " I told him I would deposit a thou-
sand dollars in his hands, provided he would not pay it to any-
body until I told him, as I wanted to examine the property,
and see that the title was all right, before any money was paid
over."   The agreement, the receipt, and the land contract above
referred to all show that this statement is not true; but, if true,
it does not aid the people.   The most that can be claimed from
the statement is that Goodwin wanted the money held until he
examined the property, and ascertained whether the title was
good or not.   But he examined the land, and, after such ex-
amination, expressed himself at least so far satisfied with it as
to request the owners to produce a deed at defendant's office at
the time agreed upon; and he did not then object, and never
has, so far as appears from the record before us, objected, to the
title.   Not only this, but after he made the examination, and
had concluded to have nothing further to do with the purchase,
when defendant asked him how he " found things," he did not
manifest dissatisfaction of any kind; said nothing of deman-
ding a return of his money.   This, of itself, is sufficient to
characterize the transaction, and show that the money was not
deposited for a special purpose, but was paid to apply upon the

purchase price, as all the other evidence in the case indicates. It is unreasonable to suppose that one who had deposited money with another for a special purpose would not at the first opportunity, after having learned that he has been deceived, or that the money was not to be used for the special purpose for which he deposited it, demand back his money, rather than seek, as the complainant did, the aid of an attorney to obtain the possession, before there had ever been a refusal to return.

I am of the opinion, therefore, that the trial court erred in denying defendant's motion for a new trial.   A trial court is authorized to grant a new trial when the verdict is contrary to law, or clearly against evidence.   Code Cr. Proc. § 465, subd. 6 ; People v. Smith, 6 App. Div. 234, 39 N. Y. Supp. 1009. This verdict is both, and I am for this reason unable to concur in the opinion of Mr. Justice PATTERSON.   I think the judgment should be reversed, and a new trial ordered.