VOUGHT, imp., Plaintiff in error, vs. THE STATE, Defendant in error.

*November 30, 1907—March 10, 1908.*

*Larceny: Codefendants: Acquittal of some: Sufficiency of evidence: Fictitious town orders: Consent of town: Larceny by trick: Grand jury: Constitutional law: Admission of evidence: Prejudicial error.*

1. Where members of a town board and certain town officers were indicted for larceny of town orders and the evidence showed that all the defendants participated in the issuance of such orders in pursuance of a fraudulent scheme to misappropriate

town funds, the acquittal of two of the defendants who never cashed any of the orders or received any money on them does not invalidate the conviction·of another member of the board who obtained possession of three of the orders and cashed them.

2. Where town officers were prosecuted for larceny of fictitious town orders issued by them in pursuance of a scheme to defraud the town, the testimony of one of the officers as a state witness, corroborated by other evidence, was sufficient to sustain a conviction.

3. A town order is the subject of larceny under sec. 4415, Stats. (1898).

4. Fictitious town orders fraudulently issued to pay no debt and payable to nonexistent persons, but subsequently disposed of by a member of the town board for more than $100, are the subject of larceny under sec. 4415, Stats. (1898), even though the town may not be liable on them. WINSLOW, C. J., and MARSHALL, J., dissent.

5. The use by a member of a town board of fictitious orders fraudulently issued by such board and in their possession as a means of misappropriating town funds is an unlawful diversion of the property of the town against its consent and constitutes larceny.

6. It is not necessary that a trespass in a technical sense be committed to constitute larceny where property is taken by artifice, fraud, or false pretense.

7. Ch. 90, Laws of 1903, providing for the selection of grand jurors, is constitutional.

8. The inadvertent admission of objectionable evidence which was stricken out and the jury instructed to disregard it is *held* not to constitute prejudicial error.

ERROR to review a judgment of the circuit court for Ashland county: A. J. VINJE, Judge. · *Affirmed.*

The plaintiff in error, hereinafter called defendant *Vought,* was tried and convicted of larceny of several alleged town orders. The indictment was against defendant *Mert H. Vought* and four others, namely, Michael J. Collins, Alexander McDonald, H. B. Templin, and Peter Fishbach. Templin was not arrested and a *nolle* was filed as to Fishbach. Collins and McDonald filed a plea in abatement, which was demurred to by the state and the demurrer sustained and exception taken. A trial was had and resulted in a verdict finding the defendants *Vought* and Templin

guilty and Collins and McDonald not guilty. A motion by defendant. *Vought* to set aside the verdict and for a new trial was denied and *Vought* was sentenced to state's prison at Waupun for one year beginning at 12 o'clock noon on the 22d day of April, 1907. Defendant *Vought* brings error.

For the plaintiff in error there were briefs by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.*

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt,* third assistant attorney general, and *V. T. Pierrelee,* district attorney, of counsel, and oral argument by *Mr. Messerschmidt.*

The following opinion was filed January 8, 1908:

KERWIN, J. There is evidence tending to show that the defendant *Vought* and McDonald were members of the board of supervisors of the town of Morse, Ashland county, and Collins chairman of the board, Peter Fishbach highway commissioner, and Templin town clerk; that on the 1st day of November, 1902, the town board was in session doing its regular business and passing upon claims presented against the town; that during the proceedings and before the completion of their work it was suggested by one of the members that it was about time they were having another rake-off, and for the purpose of carrying out this scheme and fraudulently obtaining money for each of the five parties concerned, namely, the three members of the board, the clerk, and highway commissioner, it was proposed to present claims in names of fictitious persons and have them allowed, orders issued therefor, and the money collected and distributed among the parties; that defendant *Vought* took an active part in the scheme, whereupon seven fictitious names were presented by the members of the town board, the clerk, and the commissioner of highways, and claims for alleged road work entered in their favor, varying in amounts from $35 to $40.25.

These claims were entered up among the legitimate claims and placed upon the pay roll, voted upon by the board and allowed, all members of the board voting in favor of such allowance. The minutes of the town meeting show that these claims were regularly presented and O. K.'d by the chairman, and regularly voted upon, passed, and allowed in favor of the parties named as claimants in the claims presented. After the claims were allowed, in pursuance of the scheme orders were drawn up by the clerk (Templin) in the regular form of town orders and regularly numbered from 1854 to 1860, inclusive, and signed by Collins, chairman of the board of supervisors, and Templin, clerk. The clerk then tore out the orders and passed them around, one to the chairman, one to each of the supervisors, one to the highway commissioner, and had three left. Whereupon it was suggested by one of the party that all the orders be given to Collins (chairman) to have cashed and the money divided, and they were delivered to Collins accordingly. The understanding was that the parties should have about $50 apiece out of the rake-off, which was represented by these seven orders. The orders when taken out of the order book were receipted for by Fishbach signing on the stub the names of the payees and his own initials below. Shortly after the orders were delivered to Collins, Fishbach called at Collins's saloon and received something over $50 as his portion of the plunder. The seven orders aggregated $265.25. Three of these orders, aggregating over $100, were presented at a bank by defendant *Vought* and cashed. Several propositions based upon the errors assigned are discussed by defendant.

1. It is insisted that because the indictment charges Collins, McDonald, defendant *Vought*, Templin, and Fishbach jointly it cannot be sustained against any one of the persons jointly indicted unless the alleged offense was committed in the manner detailed by Fishbach, one of the principal witnesses for the state; that it was impossible for defendant

*Vought* alone or in conjunction with Templin or Fishbach to do the thing charged, and that the offense could not have been committed unless McDonald and Collins were equally guilty with defendant *Vought;* that in clearing Collins and McDonald the jury found Fishbach was a perjurer and his story a fabrication, therefore all persons accused with Collins and McDonald were necessarily exonerated. We do not think the acquittal of Collins and McDonald had any such effect, nor do we think the jury necessarily found by the acquittal of Collins and McDonald that Fishbach was a perjurer or that his testimony respecting the making of the orders and pay roll was necessarily false. Fishbach's story was corroborated in many particulars by other evidence tending to fix guilt upon defendant *Vought.* The evidence respecting the guilt of *Vought* and the other defendants was different. Each defendant testified in his own behalf. The jury may well have found the evidence of Fishbach on the making of the orders true and yet have found that Collins and McDonald were not guilty of larceny of the orders, or any of them. The jury may have found, as testified to by Fishbach, that McDonald took all the orders and carried them away and also have found that defendant *Vought* afterwards, in pursuance of the fraudulent scheme, got possession of three of the orders and cashed them, and that Collins and McDonald never cashed any of the orders or received any money upon them, although they participated in the scheme up to the point of delivering the orders. There is no doubt that the evidence is sufficient to establish the corrupt scheme and the issuance and delivery of the orders in pursuance thereof and that defendant *Vought* got a portion of the plunder by obtaining the money upon three of the orders. The jury doubtless found this in convicting defendant *Vought.* They doubtless also found upon all the evidence some ground for acquitting Collins and McDonald not inconsistent with the conviction of *Vought,* and whether the

grounds for the discharge of Collins and McDonald were sufficient it is unnecessary to consider, since the evidence was sufficient to convict defendant *Vought*. Upon the evidence produced we are very clear that the discharge of Collins and McDonald did not necessarily work a discharge of defendant *Vought*. Counsel is in error in his contention that the discharge of Collins and McDonald necessarily discharged defendant *Vought*. It is true that there are cases where the acquittal of one jointly indicted works a discharge of all. But such authorities are clearly distinguishable from the case before us, as will be seen by an examination of the cases cited by counsel for defendant and many others.

*State v. Wilson,* 3 McCord, 187, is where two persons were indicted together for stealing the same goods, and it was held that one could not be convicted of grand and the other of petit larceny. The court said that two persons equally concerned in stealing the same article could not be guilty of different offenses; that the jury could not value the property at one price in the hands of one man and at another in the hands of another, who were equally concerned in the same transaction, for the purpose of subjecting one to a greater punishment than the other. *State v. Jackson,* 7 S. C. 283, was where A. and B. were indicted for conspiracy. Both appeared and pleaded to the indictment. B. was put upon trial and A. used as a witness for the state. After the jury retired a *nolle* was entered as to A. and a verdict of guilty rendered as to B. It was held that judgment could not be pronounced on the verdict, since it would amount to convicting one of conspiracy, and a conspiracy implies a combination between two or more. *State v. Tom,* 13 N. C. (2 Dev. Law) 569, and *Rex v. Plummer,* [1902] 2 K. B. 339, are conspiracy cases. *Comm. v. Edwards,* 135 Pa. St. 474, 19 Atl. 1064, turned on the construction of a statute relating to costs. *Delany v. People,* 10 Mich. 241, was a case of lewd and lascivious cohabitation under a statute making

the offense the joint act of two, and hence an indictment charging one stated no offense under the statute. 2 Hawk. P. C. ch. 29, sec. 40, relates to principal and accessory.

It will be seen that the foregoing cases cited by counsel for defendant *Vought* are not in point and do not help his contention. In case of adultery it has been held that one participant may be convicted and the other acquitted. *Alonzo v. State,* 15 Tex. App. 378, citing 2 Whart. Crim. Law, §§ 1724, 1730, and *State v. Caldwell,* 8 Baxt. 576. But we regard it unnecessary to prolong discussion upon this point. We think it entirely clear that the verdict of not guilty as to Collins and McDonald in no way interfered with the conviction of *Vought.*

2. It is further insisted that if Fishbach's story falls the whole case falls. In the first place it is for the jury to say whether Fishbach's story falls. His story was in many respects corroborated. A record was made of the transactions and the signatures produced. A record of the orders made and signed was produced. There was also a stub book showing receipts for the seven orders, and a record showing that the bank received three orders from *Vought.* Other evidence might be recited strongly corroborating Fishbach's evidence as to the board meeting. We cannot bring ourselves to the conclusion contended for by counsel that Fishbach's board-meeting story falls, but on the contrary think it is well supported by the evidence.

3. It is further insisted that the value of the property was not shown and that it had no value. The argument of counsel is that the seven orders being issued without authority were void and of no value. As we have before observed, the orders in question were regular upon their face. Not only were they regular upon their face and signed by the chairman and countersigned by the clerk, but all the proceedings back of the orders, as appears from the town records, were regular. The claims in favor of the persons named in the orders

as payees for labor were presented, filed, and allowed by the board and placed upon the pay roll and the orders in question drawn for the respective amounts. There was nothing upon the face of the orders or in the town records to cast any suspicion upon the validity of the orders at the time the three orders were cashed at the bank by *Vought* or at the time the seven orders in question were signed and delivered to Collins. Now, in order to successfully defend against these orders, it would be necessary to establish the facts contrary to the town records to the effect that the names of the payees were fictitious names and that no such claims in fact existed against the town. Until this was established the orders constituted valid obligations against the town; subject to be defeated upon proof of facts showing their invalidity and a determination of the fact of invalidity. It is said the orders were of no value. The three orders cashed by *Vought* proved to be of value to him, since he received more than $100 for them at the bank. They accomplished the purpose for which they were issued, namely, to pass as valid obligations against the town, and it is safe to say that no diligence on the part of the bank would have discovered any infirmity in them. Sec. 4415, Stats. (1898), provides:

"Any person who shall commit the crime of larceny by stealing the property of another, any money, goods or chattels, or any bank note, bond, promissory note, bill of exchange, order, certificate, book of account, conveyance of real estate, bill of sale, mortgage, valuable contract, receipt, release, defeasance, railroad passenger ticket, ticket of admission to any place, any writ, process, public record, or any instrument in writing whereby any demand, right or obligation is created, increased, diminished or extinguished or any personal property whatever, if the value thereof shall exceed one hundred dollars, shall, unless it be otherwise provided in these statutes as to some particular offense, be punished by imprisonment in the state prison not more than five years nor less than one year. . . ."

There can be no doubt under this statute that a town order is the subject of larceny. *Clawson v. State,* 129 Wis. 650, 109 N. W. 578; *State v. White,* 66 Wis. 343, 28 N. W. 202. The only question is whether the alleged invalidity renders the orders of no value and therefore not the subject of larceny. We think the case at bar is ruled by the doctrine laid down by this court in *State v. White, supra,* and *Norton v. State,* 129 Wis. 659, 109 N. W. 531. In *State v. White, supra,* it was held that unissued negotiable bonds of a city in the custody of the city comptroller were property for the taking and conversion of which he may be convicted of embezzlement, even though the city may not be liable on the bonds. The reasoning of the court is very much in point as bearing upon the instant case. At page 349 (28 N. W. 204) the court said:

"The argument that the city of Milwaukee may not be liable to the holders of the bonds fraudulently converted by the defendant—an argument which may or may not be a sound one, and the determination of which, one way or the other, may depend very much upon the court in which the action to enforce the payment thereof may be brought—does not seem to us a sufficient reason for holding the defendant not guilty of a crime in converting them. To him the bonds were just as good as though they had been regularly issued. He received the same compensation that he would have received had they been regularly issued; and it would seem to be just that he should not now be heard to say they were merely waste paper. If the person who purchased them of him shall fail to recover on them against the city, certainly a great injustice has been done to that person; and, though the city may succeed in making a defense, it will be at considerable cost and expenditure, and so far it will be injured by the fraud of the defendant."

In *Norton v. State,* 129 Wis. 659, 109 N. W. 531, it was held that a check falsely made with intent to defraud and apparently sufficient on its face is a forgery, even though other steps, such as indorsement by the payee, would be nec-

essary, if it were genuine, to perfect it in the hands of the accused. In *State v. Morgan,* 109 Tenn. 157, 69 S. W. 970, it was held that a county warrant obtained by fraud and void was the subject of larceny.

It is further insisted by counsel for defendant that the orders were not orders at all, but simply waste paper, and created no obligation against the town. They were valid on their face and upon the face of the town records, and valid until set aside or defeated by a judgment establishing their invalidity, which might or might not be accomplished, depending on· the evidence produced and the result of a trial. We think under the rules laid down by this court in *State v. White, supra,* and *Norton v. State, supra,* the orders were the subject of larceny and their value sufficiently established.

4. It is further insisted that the element of trespass or nonconsent is wanting and hence no larceny is proved. It is said the things claimed to have been stolen were lawfully in possession of the town board as officers of the town, and if they carried them away there could be no trespass and no nonconsent. But the property of the town was in possession of its officers for lawful, not for unlawful, purposes, and every unlawful diversion of funds of the town by its officers involves the element of nonconsent on the part of the town. Nor is it necessary that a trespass in the technical sense be ·committed in order to constitute larceny, where the property is taken by artifice, fraud, or false pretense. *People v. Hughes,* 91 Hun, 354, 36 N. Y. Supp. 493; *People v. Laurence,* 137 N. Y. 517, 33 N. E. 547; *People v. Shaw,* 57 Mich. 403, 24 N. W. 121; *Frazier v. State,* 85 Ala. 17. Moreover, by sec. 4415, Stats. (1898), embezzlement is made larceny, and counsel for defendant says if the state has proved an offense it is embezzlement.

5. It is further urged by counsel for defendant that *Vought* was not indicted by a lawful grand jury, on the ground that

ch. 90, Laws of 1903, is unconstitutional as being in contravention of the state and federal constitutions. We regard this question settled against the defendant's contention by former decisions of this court, notably *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N. W. 475. After a careful examination of the exhaustive argument of counsel upon this point we are unable to discover any reason for receding from our former decisions and must regard the question at rest.

Complaint is made by counsel of the "excessive zeal of state's attorney," but we find nothing under this head which could have worked any prejudice to the defendant.

Error is also assigned because of alleged erroneous admission of evidence. The most objectionable evidence came in inadvertently and was afterwards stricken out and the jury instructed to disregard it. We find no prejudicial error under this head.

After a careful examination of the record we think no prejudicial error was committed, and therefore the judgment must be affirmed.

*By the Court.*—Judgment affirmed.


The following opinion was filed January 28, 1908:


Winslow, C. J. (*dissenting*). I cannot agree with this decision, because it seems to me that some well-settled principles of the law of larceny have been disregarded. Grand larceny can only be committed by the stealing of personal property exceeding $20 in value, and the value must be affirmatively proven. The property claimed to have been stolen here was a fictitious town order fraudulently issued to pay no debt and payable to a nonexistent person. It was not authorized by law, but was absolutely void in whosesoever hands it might be found. *Hubbard v. Lyndon,* 28 Wis. 674. It was not negotiable. Sec. 1675—1, Stats. (Supp. 1906; Laws of 1899, ch. 356). It was utterly worthless. The fact that the defendant may have induced some one to believe that it was

genuine, and thus by fraud obtained authority for it, does not prove that it was of value. As well might it be claimed that the value of a bogus gold brick was $1,000 because a sharper had obtained that sum for it from his confiding victim. This instrument looked like a town order, but was not so in fact, any more than a forged note, which has deceived an innocent purchaser, is a genuine note. In order to be the subject of larceny it must be shown that the instrument charged to have been stolen is valid and genuine. 2 Bish. New Crim. Law, § 786; 18 Am. & Eng. Ency. of Law (2d ed.) 517; 1 Whart. Crim. Law, §§ 878, 882b. It has, indeed, been held that where genuine negotiable instruments have been stolen from the maker before delivery, and can be or have been placed in the hands of innocent purchasers for value and thus become binding obligations, they become the subjects of larceny. *Comm. v. Rand,* 7 Met. 475; *Bork v. People,* 91 N. Y. 5; *State v. White,* 66 Wis. 343, 28 N. W. 202. This principle, however, does not reach the present case, because the instrument here in question was nonnegotiable even if it had been genuine. It is true that in the *White Case* it was said that it would make no difference in such a case whether the instrument could be recovered on in the hands of an innocent purchaser or not; but it must be remembered that the court was speaking of a regularly executed negotiable bond, which in some courts at least would be valid in the hands of an innocent purchaser even if stolen, and the question whether the taking of a spurious nonnegotiable instrument would be subject to the same rule was not before it. I think that the conclusion of the court in the present case on this question is not only contrary to sound principle, but contrary to the practically unanimous weight of authority.

I am authorized to state that Mr. Justice MARSHALL concurs in this dissent.

. . . . . . . . .

Upon a motion by the plaintiff in error for a rehearing there was a brief by *Sanborn, Lamoreux & Pray* and *H. B.*

*Walmsley,* his attorneys, and a brief for the defendant in error by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

The motion was denied March 10, 1908.